MARIA C. DIGLIO, ESQ. (MD 5650)
mdiglio@bcfdlaw.com
BLODNICK, CONROY, FAZIO & DIGLIO, P.C.
*Attorneys for Defendants Yakov Aminov, GNK Medical Supply, Inc., and*
*Highlawn Best Medical Supply, Inc.*
1325 Franklin Avenue, Suite 555
Garden City, New York 11530
(516) 248-2425

UNITED STATES DISTRICT COURT                          Index No.
EASTERN DISTRICT OF NEW YORK                          11-CV-2391 (JG) (JMA)
-------------------------------------------------------------------------x
ALLSTATE INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY, and ALLSTATE
NEW JERSEY INSURANCE COMPANY,
                                        Plaintiffs

-v.-

AMNER KHAIMOV, ZOYA AMINOVA, MURDAKHAY
KHAMIOV, ALBERT KHAIMOV, YAKOV AMINOV, ILYA
TAMAYEFF, ABRAHAM LAYLIEV, ROBERT TERDJANIAN,
GALINA VOVK, a/k/a VALENTINA BABUCEA, VLADISLAV
AGUVAYEV, OLEG SIMAKOV, SERGEY MEZKULA,
GRIGOL APRESYANTSI, MARIFAT DAVLATKHONOVA,
MICHAEL ZAVRAZHIN, LAPRELA SUPPLY, INC. f/k/a
NEW MILLENIUM SUPPLY, INC., PARSONS MEDICAL
SUPPLY, INC., JAMAICA MEDICAL SUPPLY, INC., QUEENS
MEDICAL SUPPLY, INC., GRAND MEDICAL SUPPLY, INC.,
ROYAL MEDICAL SUPPLY, INC., UTOPIA EQUIPMENT,
INC., GNK MEDICAL SUPPLY, INC., HIGHLAWN BEST
MEDICAL SUPPLY, INC., NEW CAPITAL SUPPLY, INC.,
AVR MEDICAL SUPPLY, INC., FRAZIER TRADING CO.,
INC., A TO Z WHOLESALE, INC., BULLS EYE WHOLESALE,
INC., E-Z SUPPLY, INC., GLOBAL BEST DEAL, INC.,
GRIGOLSUPPLY, INC., HONO OFFICE SUPPLY, INC.,
MEDCURE SUPPLIES, INC., TELYA CORP., MAJOR
MARKET
MERCHANDISE, INC., VZ GROUP, INC., JOHN DOES
1 THROUGH 20 and ABC CORPORATIONS 1 THROUGH 20,

                                        Defendants.
-------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 9(C) AND 12(B)(6)**

## Contents

Preliminary Statement ........................................................................................................1

Statement of Facts .............................................................................................................2

Plaintiffs' Complaint Fails To State A Cause Of Action Under Either 18 U.S.C. § 1962(c) Or § 1962(d).....................................................................................................................................5

    Plaintiffs' Complaint Fails To State A Cause Of Action For Common Law Fraud...................21

    The Complaint Does Not State a Legal Cause of Action for Unjust ............................23

    Enrichment Or Aiding And Abetting..........................................................................23

## Cases

*Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir.2007) ...........................................11

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...........................................10

*Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)....................9, 10

*Atkins v. Apollo Real Estate Advisors, L.P.*, 2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008) .............17

*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007). ...........................................10

*Barnes v. Cathers and Dembrosky*, 2003 WL 22928640 (S.D.N.Y. Dec. 10, 2003)........................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1970, 167 L.Ed.2d 929 (2007) ...9,10

*Blue Cross and Blue Shield of New Jersey v. Phillip Morris, Inc.*, 113 F. Supp. 2d 345 (E.D.N.Y. 2000)..............................................................................................24

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993) ........................................12

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ..............................................16

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). ...........................................11

*Citibank, N.A. v. Walker*, 12 A.D.3d 480 (2d Dept. 2004) ..........................................26

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010)..........................................16

*Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991)..........................................12

*Crab House of Douglaston, Inc. v. Newsday*, Inc., 418 F. Supp. 2d 193 (E.D.N.Y. 2006)...............18

*Daddona v. Gaudio*, 156 F. Supp. 2d 153 (D. Conn. 2000)..........................................18

*Defazio v. Wallis*, 500 F. Supp. 2d 197 (E.D.N.Y. 2007) ..........................................19

*First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763 (2d Cir.1994). ......................................11

*Fitch v. TMF Systems*, 272 A.D.2d 775, 757 N.Y.S.2d 539 (3rd Dept. 2000) ................................24

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir.1997) ..........................................15

*Fonte v. Bd. Of Managers of Continental Towers*, 848 F2d 24 (2d Cir.,1988). ..............................12

*Freund v. Lerner*, 2010 WL 3156037 (S.D.N.Y. Aug. 10, 2010) ..........................................17

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991)..........................................13

*Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 629 N.Y.S.2d 1009 (N.Y. 1995)..................................................................................................................................24

*Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009)..............................................................13

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).....................................................18

*Holowecki v. Fed. Express Corp.*, 440 F3d 558 (2d Cir., 2006)....................................................11

*In re MBIA, Inc., Securities Litigation*, 700 F. Supp.2d. 566 (SDNY, 2010) .............................10, 12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (JG)(JO), Not Reported in F.Supp., 2008 WL 115104 (EDNY, 2008)...........................11

*In re Yukos Oil Co.*, Sec. Litig., No. 04-CV-5243, 2006 WL 3026024 (SDNY, Oct. 25, 2006).......12

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007). ..............................................................................10

*Jacobsohn v. Marks*, 1993 WL 513202 (N.D.Ill. Sept. 27, 1993) ...............................................19

*Karagozian v. Coty US, LLC*, 2011 WL 536423 (E.D.N.Y. Feb. 10, 2011).....................................20

*Kelly v. Huntington Union Free School Dist.*, 675 F.Supp.2d 283 (EDNY, 2009) ..........................12

*Kline v. Taukpoint Realty Corp.*, 302 A.D.2d 433, 754 N.Y.S.2d 899 (2d Dept 2003)....................23

*Kramer v. Time-Warner*, 937 F2d 767 (2d Cir. 1991); .................................................................12

*Leibowitz v. Cornell Univ.*, 445 F.3d 586 (2d Cir.2006)................................................................9

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003)..............................................................16

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ............................................................................22

*Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300 (S.D.N.Y. 2009) ...........................................16

*Maisano v. Beckoff*, 2 A.D.3d 412, 767 N.Y.S.2d 790 ................................................................25

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993).......................................................19

*In Re Drexel Burnham  Lambert Group*, 960 F2d 285 (2d Cir., 1992)...........................................11

*Nationscredit Fin. Servs. Corp. v. Turcios*, 55 A.D.3d 806, 866 N.Y.S.2d 690 ............................25

*O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222 (S.D.N.Y. 1989).......................22

*Ozbakir v. Scotti*, --- F.Supp.2d ----, 2011 WL 477039 (W.D.N.Y. Feb. 10, 2011) ........................18

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007)................................................................................9

*Ray v. GMAC*, 1995 WL 151852 (E.D.N.Y. Mar. 28, 1995)...........................................................20

*Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 2010 WL 3835196, at *3 (S.D.N.Y. Sept. 14, 2010)................................................................................................................................16

*Roth v. Jennings*, 489 F.3d 499 (2d Cir.2007) ............................................................................11

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998).................................................16, 16

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ...........................................................14

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ..........................................11

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)..................................................................22

*State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71 (2d Cir. 2007)...................11

*Sykes v. Mel Harris and Associates, LLC*, 2010 WL 5395712 (S.D.N.Y. Dec. 29, 2010) ...............19

*Tanzman v. La Pietra*, 291 A.D.2d 703, 737 N.Y.S.2d 444 (3rd Dept 2002).................................24

*Town of Huntington v. American Mfrs. Mut. Ins. Co.*, 267 F.R.D. 449 (E.D.N.Y.,2010) .................12

*United States v. Burden*, 600 F.3d 204 (2d Cir. 2010).................................................................18

*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006)....................................................................18

*United States v. Turkette*, 452 U.S. 576 (1981).....................................................................14, 16

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir.1995). ...................................................11

*Zhu v. First Atlantic Bank*, 2005 WL 2757536 (Oct. 25 2005)..........................................................21

## PRELIMINARY STATEMENT

Defendants Yakov Aminov ("Aminov"), GNK Medical Supply, Inc. ("GNK"), and Highlawn Best Medical Supply, Inc. ("Highlawn") (collectively "Defendants") hereby move to dismiss Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate New Jersey Insurance Company's ("Allstate" or "Plaintiffs") First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

Plaintiffs have failed to plead a civil RICO claim pursuant to 18 U.S.C. § 1962(c) and (d) as they have: (1) failed to meet the distinctness requirement between the alleged enterprise, the alleged participants of alleged enterprise, and the alleged predicate acts; (2) failed to adequately plead mail and wire fraud; (3) failed to meet the pleading requirements set forth in RICO generally; and (4) failed to show reasonable reliance as a matter of law.  In addition, portions of Plaintiffs' RICO claims are barred by the statute of limitations.  Lastly, Plaintiffs have also failed to plead a cause of action: (1) for unjust enrichment, (2) for common law fraud, and (3) for aiding and abetting.

Seeking a more financially favorable alternative, Allstate has recently commenced a number of "massive fraudulent scheme" litigations, and enlisted both the New York State Courts and the federal courts in the Eastern District of New York as the venues of choice in its crusade to reduce its costs.  By doing so, Allstate is able to exponentially raise the stakes on otherwise small individual litigations more properly venued in the Civil Court of the State of New York, and pit its vast financial empire in a war of attrition against "mom and pop" medical supply corporations.

In the wake of *State Farm v. Mallela*, 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005), it has become a common practice among no fault automobile insurers, particular those like GEICO, State Farm and Allstate, to target medical providers with RICO actions here in the Eastern District of New York and to then settle these cases to avoid or reduce outstanding accounts payable.

A cursory search of the Court's Electronic Filing/Pacer System indicates that GEICO, alone, initiated at least twenty-four such suits in this district in 2010-2011 alone.  In fact, a similar cursory search reveals that more than 47 such suits have been brought in this District just by GEICO, Allstate and State Farm.   These insurance companies typically elicit a settlement in which the medical corporation "walks away" from their outstanding claims or agrees to accept a portion on the dollar.   It is also noteworthy that a similar search of the ECF of the Southern District of New York for the same period of time indicates only two such suits brought by these same three insurers. Clearly, these insurance companies have forum shopped, as the many of the Southern District Judges require the filing of a mandatory "RICO Statement" (a four page document that plaintiffs must complete which elicits further details as to the RICO conspiracy in twenty paragraphs).  The requirement of filing a RICO Statement has become part of the local rules of the Western District of New York and the Northern District of New York.  (*See* Local Rules of the USDC-WDNY, Rule 9 and Local Rules of the USDC-NDNY, Rule 9.2).

It is against this backdrop that the Court should view the unwieldy and generically pleaded fraud and RICO claims in this matter.  For the reasons and authorities that follow, the Court should grant Defendants' motion and dismiss the Complaint in its entirety.

Plaintiffs seek to circumvent the No-Fault laws through the avoidance of the required procedure which requires that Plaintiffs promptly deny claims within 30 days.  *See* Insurance Law § 5106 (a); *Bath Med. Supply, Inc. v Allstate Indem. Co.*, 27 Misc.3d 92, 902 N.Y.S.2d 875 (N.Y. Sup. Ct. App. Term 2010); *Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556 (2008).  As the New York Court of Appeals has held:

> No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits (*see, Montgomery v. Daniels*, 38 NY2d 41). That is part of the price paid to eliminate common-law contested

2

lawsuits. Indeed, contrary to the insurer's assertions, preclusion of this type was an available remedy at common law, and if this important facet of the juridical rights and remedies among the various interested parties is to be deemed eliminated, it must be evident more plainly and expressly as this would be in derogation of a common-law protection. The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices. To string out belated and extra bites at the apple is, on the present state of the law, inherently contradictory and unfounded under the statutes, regulations and policies that pertain to and govern this dispute, and we should not countenance such practices on the state of this record and these regulations and statutes.

*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 N.Y.2d 274, 285 (1997).  Plaintiffs have paid a substantial portion of the claims at issue—and now seek a second bite of the apple—to have those monies returned to them on a three to one basis.

### STATEMENT OF FACTS

Allstate seeks to recover "more than $2,100,000.00" in payments that Defendants allegedly "stole from Plaintiffs through the submission of hundreds of false and/or fraudulent insurance claims for durable medical equipment and supplies ("DME") and/or orthotic devices, including but not limited to cervical pillows, cervical traction units, cold/hot water circulating pumps, electronic muscle stimulator units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses, whirlpools, cervical collars and ankle, back, knee, shoulder and wrist braces." *See* Compl., at ¶ 2.  Plaintiffs' Amended Complaint contains five causes of action against Defendants sounding in RICO violations pursuant to 18 U.S.C. § 1962(c), common law fraud, unjust enrichment, and "aiding and abetting." *Id.* at ¶¶ 448-499.

Plaintiffs' twentieth and twenty-first claims for relief purport to allege to RICO violations pursuant to 18 U.S.C. § 1962(c).  The twentieth cause of action concerns GNK, and states in

relevant part that "Defendant Aminov, together with others unknown to Plaintiffs, exerted control over, and directed the operations of [GNK] . . . Defendant Aminov utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting, and/or causing to be submitted the fraudulent bills and supporting documents to [Plaintiffs] that were based, in part, on the utilization of fraudulent wholesale invoices" *Id.* at ¶ 451.  Plaintiffs then proceed to allege that "ABC Corporations 1 through 20 and one or more of the John Does 5 through 20" engaged in the scheme "by providing inexpensive DME and/or orthotic devices . . . along with fraudulent wholesale invoices which grossly inflated the purported cost [of these devices] to facilitate the fraudulent billing alleged in the First Amended Complaint." *Id.* at ¶ 452.  Plaintiffs do not identify the names of the 20 corporations or the 15 John Does involved in this scheme.  The substance of the racketeering acts alleged against GNK taking place "over nearly a two and-one-half period," were orchestrated by Aminov along with the phantom ABC Corporations and John Does.  These acts "caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341 [and were made] in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the [GNK] enterprise based upon materially false and misleading information." *Id.* at ¶¶ 454,456.  The twenty-first cause of action, this time aimed solely at Highlawn, contains identical allegations as the ones levied against GNK. *Id.* at ¶¶ 463-477.  The only difference is the time frame, as the allegations against Highlawn allegedly took place "[f]rom in or about 2009 through the date of filing of the First Amended Complaint." *Id.* at ¶ 465.

Plaintiffs' twenty-second cause of action against GNK, Highlawn, and Aminov, is based upon common law fraud. *Id.* at ¶¶ 478-487.  Allstate alleges, only upon information and belief, that Defendants "intentionally, knowingly, fraudulently, and with an intent to deceive, submitted bills, prescriptions, delivery receipts, and other documentation which contained false representations of

4

material facts." *Id.* at ¶ 481.  Plaintiffs then continue the parrot the factors for a cause of action for common law fraud in paragraphs 482-486.

Allstate's twenty-third cause of action against GNK, Highlawn, and Aminov is based upon unjust enrichment.  *Id.* at ¶¶ 488-491.  Plaintiffs state simply that because of their unlawful actions, Defendants were unjustly enriched, and should not keep those proceeds.  *Id.* at ¶ 489.  Plaintiffs' last cause of action against Defendants is entitled "Aiding and Abetting."  *Id.* at ¶ 492-499.

As set forth below, properly pleading a RICO claim is an extremely complicated and complex endeavor, consisting of seven separate elements.  Furthermore, each of those separate elements in turn has its own separate pleading elements.  For example, pleading predicate acts requires pleading at least two acts performed by each individual defendant.  Here, the predicate acts supposedly alleged are mail fraud, which requires pleading the elements of fraud with particularity. Pleading an enterprise involves identifying an enterprise, contrasting it with separate RICO persons, and distinguishing both from the pattern of racketeering activity.  Pleading racketeering activity requires continuity, and requires pleading whether the continuity is open-ended or closed-ended. The Complaint amorphously alleges that all of the Defendants committed all of the predicate acts.

**POINT I**

**PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER EITHER 18 U.S.C. § 1962(C) OR § 1962(D)**

A.    **LEGAL STANDARD**

*Fed. R. Civ. P. 12(b)(6)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).  A complaint generally must satisfy the minimal notice pleading requirements of Federal

Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir.2006).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Twombly*, at 556). To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiff's complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1970, 167 L.Ed.2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *Id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007) (applying the standard of plausibility outside Twombly's antitrust context), it must "amplify a claim with some factual allegations ... to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007). The complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged... '[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do', rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the

6

speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted).

"Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Ashcroft v. Iqbal*, -- US--, 129 S.Ct. 1937, 1950, 173 L.Ed2d 868 (2009). "If the plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *In re MBIA, INC., Securities Litigation*, 700 F. Supp. 2d. 566 (SDNY, 2010) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002); *See also Twombly*, 550 U.S. at 555-56; and *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007) (In deciding a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint."). The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir., 2002). "Further, if plaintiffs have actually relied on the terms and effect of a relevant document in drafting their complaint, and if the authenticity and accuracy of the document is undisputed, the document is integral to the complaint although outside of the pleadings, and the court may consider

7

it in deciding a motion to dismiss." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (JG)(JO), Not Reported in F.Supp., 2008 WL 115104 (EDNY, 2008). Indeed, the court may consider such a document even if the plaintiff's complaint does not include or incorporate it. *Id., citing Holowecki v. Fed. Express Corp.*, 440 F3d 558, 565-66 (2d Cir., 2006). The Court may also take judicial notice of undisputed facts that are matters of public record . *Almonte v. City of Long Beach*, 478 F.3d 100, 104 & n. 2 (2d Cir. 2007); *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71 (2d Cir. 2007). In addition, the court may, without converting a dismissal motion into a motion for summary judgment, consider materials of which judicial notice may be taken, such as a settlement agreement." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (JG)(JO), Not Reported in F.Supp., 2008 WL 115104 (EDNY, 2008) *citing In Re Drexel Burnham Lambert Group*, 960 F2d 285, 289 (2d Cir., 1992) and *Kramer v. Time-Warner*, 937 F2d 767, 773 (2d Cir. 1991); *See also Town of Huntington v. American Mfrs. Mut. Ins. Co.*, 267 F.R.D. 449 (E.D.N.Y.,2010) ("Such consideration includes documents of which plaintiff had notice 'and which were integral to their claim ... even though those documents were not incorporated into the complaint by reference.' *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). In this case, such documents include the documents generated in the course of the State Court Proceeding, including the complaint and the Settlement Agreement.")

"The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *In re MBIA, Inc., Securities Litigation*, 700 F. Supp.2d.566 (SDNY, 2010) *citing In re Yukos Oil Co., Sec. Litig.*, No. 04-CV-5243, 2006 WL 3026024 at 12 (SDNY, Oct. 25, 2006).

"Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Kelly v. Huntington Union Free School Dist.*, 675 F.Supp.2d 283 (EDNY, 2009); *See Also, Fonte v. Bd. Of Managers of Continental Towers*, 848 F2d 24, 25 (2d Cir.,1988).

### *Fed. R. Civ. P. 9(b)*

Fed. R. Civ. P. 9(b) states in relevant part that "[i]n alleging fraud or mistake, a party must state with <u>particularity the circumstances constituting fraud or mistake</u>." Fed. R. Civ. P. 9(b) (emphasis added). Rule 9(b)'s heightened pleading standard applies to civil RICO cases. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 142 (S.D.N.Y. 2010) (*citing Zhu v. First Atlantic Bank,* 2005 WL 2757536, at *4 (S.D.N.Y. Oct. 25, 2005)); *Serin v. Northern Leasing Systems, Inc.,* 2009 WL 7823216, at *6 (S.D.N.Y. Dec. 18. 2009); *Ivy Mar Co., Inc. v. C.R. Seasons, Ltd.,* 1997 WL 37082, at *11 (E.D.N.Y. Jan. 24, 1997).

Accordingly, "[i]n addition to alleging the particular details of a fraud . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004). "The requisite strong inference of fraud may be established either (1) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (internal quotations omitted). Plaintiffs may not "**base claims of fraud on speculation and conclusory allegations**." *Lerner*, 459 F.3d at 290–91 (internal quotation omitted) (emphasis added).

**B.     OVERVIEW OF CIVIL RICO CLAIMS AS THEY RELATE TO THIS CASE**

9

This is yet another attempt by Plaintiffs to misuse the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, to try and intimidate Defendants by the increased costs of defending litigation and by the threat of treble damages and attorney's fees.

RICO's text and legislative history simply do not align with Plaintiffs' allegations in this case. RICO sought to "strike at <u>criminal conduct</u> [which was] sufficiently serious not only to inflict injury upon its immediate private victims, but also to cause harm to significant processes or institutions, or otherwise pose threats to <u>larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute</u>." *Gross v. Waywell*, 628 F. Supp. 2d 475, 481-482 (S.D.N.Y. 2009) (emphasis added); s*ee also Genty v. Resolution Trust Corp.*, 937 F.2d 899, 912 (3d Cir. 1991) ("<u>Congress obviously had much more in mind than merely providing compensation for individual RICO victims when it authorized RICO civil actions.</u> Indeed, the harm of racketeering is dispersed among the public at large, including draining resources from the economy, subverting the democratic process, and undermining the general welfare. . . . Congress' overall purpose in passing RICO, <u>to redress serious harm to the nation as a whole</u>, is evidence of the punitive character of the treble damages provision.") (emphasis added). Plaintiffs' preposterous allegations of Defendants' conduct cannot possibly be considered as harming the nation as a whole, nor can they be deemed "sufficiently serious," while causing "harm to significant processes or institutions" or threatening "larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute," as envisioned by *Gross* and *Genty*. Civil RICO claims are inherently quasi-criminal in nature, and as such, Plaintiffs cannot allege a RICO claim without first seriously considering the act's nationwide-goals and concerns. *See Barnes v. Cathers and Dembrosky*, 2003 WL 22928640, at *1 (S.D.N.Y. Dec. 10, 2003) (recognizing that RICO claims are a "novel area of federal quasi-criminal statutory governance"). Plaintiffs have made no such considerations.

The Supreme Court has even stated that the purpose of RICO was to address a problem which Congress perceived "was of national dimensions." *Gross*, 628 F. Supp. 2d at 482; *citing United States v. Turkette*, 452 U.S. 576, 586 (1981).  In fact, the Supreme Court has recognized the practical limitations of civil RICO actions. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 500 (1985) (recognizing that "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors").

Judge Marrero in *Gross* court observed that "many courts and commentators have noted [that] RICO plaintiffs have overreached well beyond the bounds of the law's reasonable construction and fair-game litigation." *Gross*, 628 F. Supp. 2d at 480 (collecting cases).  The court, acknowledging the Seventh Circuit, went on to state that:

> Branding defendants in <u>civil actions</u> with searing accusations of racketeering activities and thus prolonging ill-considered litigation <u>to promote the private interests of only one or a few victims, and in lawsuits arising from alleged fraudulent schemes limited to localized impacts and wrongful conduct far afield from the dimensions and degree of serious criminal offenses Congress had in mind as RICO violations, is bound to engender disfavor from courts and juries alike.</u> In such circumstances, the courts' responses to litigants' efforts to stretch the contours of the law beyond reasonable bounds "emerges from a desire to make the statute make sense and have some limits." *Id.*; *citing Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir.1997) (emphasis added).

The Seventh Circuit in *Fitzgerald* cautioned courts that "[w]hen a statute is broadly worded in order to prevent loopholes from being drilled in it by ingenious lawyers, <u>there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers.</u>" *Fitzgerald v. Chrysler Corp.* 116 F.3d at 226.  This is exactly what has happened with civil RICO cases, and the instant case is a model example.

There are even more concerns that underlie Plaintiffs' attempt at bringing forth a RICO claim. Therein lies a concern that civil RICO cases which rely on "nothing more than incidental use of the mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts, <u>would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions</u>." *Gross*, 628 F. Supp. 2d at 482 (emphasis added). This is exactly what can happen in the instant case—if Plaintiffs prove successful on the merits—Defendants would have to pay a penalty which is grossly out of proportion to any alleged wrongdoing that can possibly be deciphered from the complaint.

As will be outlined below, Plaintiffs fail to state a RICO cause of action pursuant to 18 U.S.C. § 1962(c) and (d).

**C.      Plaintiffs Have Failed To State A RICO Cause Of Action Pursuant To 18 U.S.C. § 1962(c) and § 1962(d)**

A civil RICO claimant "must plead, at a minimum, (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003).

To establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must allege and prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 2010 WL 3835196, at *3 (S.D.N.Y. Sept. 14, 2010) (*citing Sedima, S.P.R.L.*, 473 U.S. 479 (1985)).

*PLAINTIFFS' COMPLAINT DOES NOT ESTABLISH THAT AN ENTERPRISE EXISTS*

In Paragraph 34, Plaintiffs allege as follows "**Defendant DME companies, retailers,**[1] **and wholesalers alike, were created for the singular purpose of fraudulently billing insurance companies under the No-fault law**." Compl., at ¶ 34 (emphasis added).  Similarly, in Paragraph 125, Plaintiffs allege that: "**the Retail Owners incorporated, owned and controlled their respective Retailers for the purpose of defrauding insurers in general, and Plaintiffs in particular.**" *Id.* at ¶ 125 (emphasis added).  This is fatal when attempting to establish an enterprise. *Atkins v. Apollo Real Estate Advisors, L.P.*, 2008 WL 1926684, at *15 (E.D.N.Y. Apr. 30, 2008) ("Case law holds that in a fraud-based RICO claim, if the sole purpose of the alleged enterprise is to perpetrate the alleged fraud, there can be no enterprise for RICO purposes.")

Initially, a RICO pleading must set forth the existence of an enterprise.  A RICO enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added).  In other words, the association among a group of defendants that necessarily results from a pattern of racketeering does not, without more, constitute a RICO enterprise; the enterprise must have "an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering." *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 333 (S.D.N.Y. 2009) (*citing Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 349 (S.D.N.Y. 1998)). The Second Circuit has made clear that "the person and the enterprise referred to must be distinct," and, therefore, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 134 (E.D.N.Y. 2010) (*citing Cedric*

---

[1]  In Paragraph 4, Plaintiffs include GNK and Highlawn in their definition of "Retailers."  Compl., at ¶ 4.

*Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)).  The complaint in this matter fails to meet this pleading requirement.

Courts have routinely dismissed civil RICO claims at the pleading stage where the purported enterprise's sole function was to perpetrate the alleged fraud.  *See Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 350 (S.D.N.Y. 1998) ("The complaints do not allege facts sufficient to support an inference that the enterprise existed as a continuous structure "separate and apart" from the commission of the predicate acts alleged, or that there was an organized mechanism for directing the enterprise's affairs on an ongoing basis beyond the fraudulent scheme alleged"); *see also Freund v. Lerner*, 2010 WL 3156037, at *6-9 (S.D.N.Y. Aug. 10, 2010) (dismissing plaintiff's civil RICO complaint where, among other things, "[t]here are no factual allegations to show the necessary structural components of an enterprise, and the complaint appears to be an attempt to allege a variety of state law claims against numerous individuals and entities with the hope that some of these vague allegations will amount to a RICO violation.")

Finally, as Plaintiffs' RICO claims that alleged an association in fact fail for lack of distinctness, any conspiracy claim relating to Defendants pursuant to 18 U.S.C. § 1962(d) must also be dismissed.  Although Plaintiffs cite to 18 U.S.C. § 1962(d) in Paragraph 37(i), they do not allege a cause of action against anyone, including Aminov, GNK, and Highlawn anywhere in the First Amended Complaint.  *Crab House of Douglaston, Inc. v. Newsday*, Inc., 418 F. Supp. 2d 193, 212 (E.D.N.Y. 2006) ("Under the law of this circuit, a claim under section 1962(d) alleging a conspiracy to violate the other subsections fails as a matter of law if the substantive claims based on the other subsections are defective") (*see also Daddona v. Gaudio*, 156 F. Supp. 2d 153, 163 (D. Conn. 2000) ("Therefore, because this Court finds that [Plaintiff's] §§ 1962(b) and 1962(c) claims [are]

deficient, [Defendant's] motions to dismiss the portion of [Plaintiff's] complaint stating a § 1962(d) conspiracy claim are granted as well").

### *Plainitffs' Complaint Has Failed To Properly Plead Mail And Wire Fraud*

The requisite "pattern . . . of racketeering activity" required by 18 U.S.C. § 1961(5) must consist of two or more predicate acts of "racketeering," as enumerated in 18 U.S.C. § 1961(1). Plaintiffs purportedly rely upon 18 U.S.C. §§ 1341 and 1343 to show that Defendants violated 18 U.S.C. § 1962(c) by committing mail and wire fraud. "Alleging two or more acts of racketeering activity, however, is not necessarily sufficient to meet the pattern requirement." *Ozbakir v. Scotti*, --- F.Supp.2d ----, 2011 WL 477039, at *9 (W.D.N.Y. Feb. 10, 2011). The acts must also be related to each other, and they must "amount to or pose a threat of continued criminal activity."[2] *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010) (emphasis added) (*quoting H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). Although a pattern of racketeering activity can be based on "multiple racketeering predicates [that are] part of a single scheme . . . it is still necessary to show that the acts amount to, or threaten the likelihood of, continued criminal activity." *Ozbakir*, 2011 WL 477039 at *9; *quoting United States v. Reifler*, 446 F.3d 65, 91 (2d Cir. 2006). A complaint alleging mail and wire fraud as the predicate acts of a RICO claim must show: (1) the existence of a scheme to defraud; (2) defendant's knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. *Sykes v. Mel Harris and Associates, LLC*, 2010 WL 5395712, at *6 (S.D.N.Y. Dec. 29, 2010).

---

[2]   Plaintiffs parrot that the purported acts of Defendants pose "a specific threat of repetition extending indefinitely into the future . . . [because Defendants] continue to pursue collection on the fraudulent billing to the present day." Compl., at ¶¶ 455,470.

The heightened pleading requirements in Fed. R. Civ. P. 9(b) are applicable to claims arising under RICO because they are grounded in fraud. *Zhu*, 2005 WL 2757536, at *4 ("[i]n order to state a civil RICO claim grounded in fraud, plaintiff must meet [the] heightened pleading standard"). In the instant matter, the complaint fails to satisfy the requirements as the elements of mail and wire fraud are not pled with particularity and are based upon conclusory allegations. When pleading mail and wire fraud, Plaintiffs are required to specify the fraudulent statements and to particularize how these statements mislead Plaintiffs. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("[a]llegations of predicate mail and wire fraud should state the contents of the communications, who was involved, where and when they took place, and explain why they are fraudulent") (emphasis added); *see also Jacobsohn v. Marks*, 1993 WL 513202, at *6 (N.D.Ill. Sept. 27, 1993) ("[t]he allegations [failed because they] provide no detail as to who mailed what to whom and when it was mailed.") If Plaintiffs cannot meet this requirement, dismissal of the complaint is appropriate. *See Defazio v. Wallis*, 500 F. Supp. 2d 197, 206 (E.D.N.Y. 2007) (while dismissing plaintiff's RICO claim, the court noted that "plaintiffs do not explain what the K-1 forms are; what information they contained; when the documents were mailed; or who sent them"). Initially, it is of great importance that Plaintiffs have not provided the actual copies of the alleged fraudulent communications which were sent through the United States mail. Plaintiffs Amended Complaint and the Appendix thereto fail to draw any distinctions between the bills cited or their putative claims of fraudulent misrepresentations. Rather, they rely upon blanket; uniform statements which they say apply to each and every single claim submitted in over 200 mailings. There is no specificity or differentiation among the claims as to the nature of the item provided, the injured insured, nor the misrepresentation allegedly made by Defendants. Volume does not substitute for substance. *See Crab House of Douglaston, Inc*, 418 F. Supp. 2d 193.

16

Instead, Plaintiffs have conveniently summarized the alleged fraudulent mailings in the Appendix to the First Amended Complaint. Plaintiffs then provide conclusory allegations explaining why the various mailings were fraudulent. Again, it should be noted again that pursuant to Fed. R. Civ. P. 9(b) fraud must be stated "with particularity," and conclusory allegations simply cannot suffice.

The following is a brief summary of some of the recitations of allegations, conclusory in nature, which Plaintiffs attempt to use to as evidence of the alleged fraudulent mailings: "[f]alse and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly provided to No-fault Claimants," "[f]alse and misleading statements that the billed for DME and/or orthotic devices were actually provided," "[f]alse and misleading statements concealing that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol." *See* Appx. to Compl. While Plaintiffs do provide an approximate date and a sketch of the contents of the mailings, Plaintiffs do not provide the reader with the particularity needed to fully consider the contents, substance, form, and logistics of the mailings. *See Karagozian v. Coty US, LLC*, 2011 WL 536423, at *4 (E.D.N.Y. Feb. 10, 2011) ("Plaintiff fails to state a claim of mail fraud because he fails to plead, with particularity, specific statements which were made, how they were false, and when they were made"). Plaintiffs do not detail how these mailings posed any threat of criminal activity, let alone a continued threat of criminal activity.

Lastly, although the Appendix states shows that documents were mailed to "Allstate Ins. Co.," the Exhibit does not state specify which Allstate entity received the communication as there are four named Plaintiffs in the matter. *See Ray v. GMAC*, 1995 WL 151852, at *8 n.7 (E.D.N.Y. Mar. 28, 1995) (dismissing mail fraud claim where Plaintiff "provided no information concerning . .

17

. [who] specifically . . . received them"). The complaint fails to meet the heightened specificity requirements under Fed. R. Civ. P. 9(b), the complaint must be dismissed.

### PLAINTIFFS' COMPLAINT AS IT RELATES TO ANY PARTICULAR DEFENDANT IS NOT PLED WITH THE REQUIRED SPECIFICITY

Plaintiffs' complaint, despite being voluminous, is replete with conclusory allegations and confusing, misleading and often times spurious conjecture, alleging that the Defendants engaged in the following conduct which constituted a violation of 18 U.S.C. § 1962(c) by: submitting fraudulent No-Fault claims for No-Fault benefits to Plaintiff and were engaged in a scheme to defraud Plaintiff by providing retailers of medical supplies inflated invoices which were then used by the retailers to overbill the Plaintiff. It is clear from Plaintiffs' complaint that Allstate is unable to articulate what role any particular Defendant played in the alleged "massive fraud scheme." There is minimal support for Plaintiffs' allegations against any of the Defendants throughout the complaint.

The Complaint is almost exclusively based on impermissible allegations of fraud "upon information and belief." Plaintiffs' allegations stemming from 18 U.S.C. § 1962(c) are based upon Defendants' alleged fraud. As stated above, civil RICO claims are subject to heightened pleading requirements. *Zhu*, 2005 WL 2757536 at *4. Further, Fed. R. Civ. P. 9(b) provides that fraud must be stated "with particularity."

These allegations do not meet the heightened pleading requirements which are necessitated in civil RICO cases and Fed. R. Civ. P. 9(b). In particular, Plaintiffs do not set forth how the John Does and ABC Corporations participated in this scheme, how this scheme will continue into the future, and how the fraudulent behavior took place.

Plaintiffs instead attempt to rely upon almost six hundred paragraphs in the complaint to disguise the fact that their allegations against Defendants are bare and conclusory. Plaintiffs' use of

twenty John Doe and twenty ABC Corporation defendants is also an insurmountable defect in their pleading. Aminov, GNK and Highlawn's roles in this alleged scheme cannot possibly be ascertained due to the fact that forty unnamed and possibly even unidentifiable and non-existent defendants remain in the complaint.

Plaintiffs' allegations, taken together, are not sufficiently pled to be considered by this court as true on a Fed. R. Civ. P. 12(b)(6) motion. "**Allegations of fraud cannot be based upon information and belief absent special circumstances.**" *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 230 (S.D.N.Y. 1989) (emphasis added) (*citing Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("It is well established, however, that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied upon absent special circumstances not present here.")

**D.   PLAINTIFFS RICO CLAIMS ARE BARRED IN WHOLE OR IN PART BY THE STATUTE OF LIMITATIONS**

It is clear that a substantial portion of Plaintiffs' RICO predicate acts fall outside the four year statute of limitations as Plaintiffs allege that the acts underlying the First Amended Complaint began "in or about June 2003." Compl., at ¶ 1. In fact, it is unascertainable just how many fall outside the statute of limitations because Plaintiffs have not provided all of the mailings. Plaintiffs filed the Amended Complaint in the instant matter on August 3, 2011. As outlined below, Plaintiffs have a four-year window in which they can "look back" and make allegations against Defendants. Rotella, 528 U.S. at 552.

Plaintiffs, not surprisingly, avoid setting forth the requisite statute of limitations governing civil RICO claims. In fact, the statute of limitations has been established by the Supreme Court for more than a decade. "Civil RICO claims are subject to a four-year statute of limitations." *Rotella v.*

*Wood*, 528 U.S. 549, 552 (2000) (emphasis added); *see also Frankel v. Cole*, 313 Fed. Appx. 418, 419 (2d Cir. 2009) (citation omitted). The statute begins to run "when the plaintiff discovers-or should have reasonably discovered-the alleged injury." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 328 Fed. Appx. 695, 697 (2d Cir. 2009); *see also Frankel*, 313 Fed. Appx. at 419-420 ("[t]he statute of limitations is triggered when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity, even if the pattern of racketeering activity includes fraud."). In addition, under the law of the Second Circuit, "the RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 328 Fed. Appx. 695, 697 (2d Cir. 2009).

The Second Circuit has also adopted a "separate accrual rule" pursuant to which a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *In Re Merrill Lynch Ltd. P'Ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998). Under this rule, a plaintiff who is continuously injured by an underlying RICO violation may only recover for injuries discovered or discoverable within four years of the time the suit is brought. *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995); *National Group for Communications and Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp. 2d 253 (S.D.N.Y. 2006). In the Second Circuit, injuries are not deemed new and independent when they derive from an alleged single, common unlawful scheme. *In Re Merrill Lynch*, 154 F.3d at 59-60; *Pharr v. Evergreen Gardens, Inc.*, 2004 WL 42262, at * 2 (S.D.N.Y. Jan. 7, 2004) (rejecting any argument that monthly invoices containing false charges resulted in "new and independent" injuries when paid.)

**Point II**

20

PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR COMMON LAW FRAUD

**A.      LEGAL STANDARD**

The elements of common-law fraud are a representation of a material fact, falsity, scienter, reliance, and injury. *Kline v. Taukpoint Realty Corp.*, 302 A.D.2d 433, 754 N.Y.S.2d 899 (2d Dept. 2003). "Bare allegations of fraud in a complaint without any allegation of the details constituting the wrong are not sufficient to sustain a cause of action." *Id.*

**B.      ALLSTATE COULD NOT HAVE REASONABLY RELIED ON THE MAILINGS**

As noted by the New York Court of Appeals, "[a] cause of action for fraud may arise when one misrepresents a material fact, knowing it is false, which another relies on to its injury." *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 629 N.Y.S.2d 1009 (N.Y. 1995). *See also Tanzman v. La Pietra*, 291 A.D.2d 703, 737 N.Y.S.2d 444 (3rd Dept. 2002); *Fitch v. TMF Systems*, 272 A.D.2d 775, 757 N.Y.S.2d 539 (3rd Dept. 2000). Here, Allsate's claim must fail as they could not have reasonably relied on the purported submissions by Defendants. Allstate has already taken the position these professional corporations have been formed for the purposes of fraudulent billing.   Compl., at ¶ 34.      Allstate's verification powers as a sophisticated insurer prevent it from asserting that it reasonably relied on the Defendants' submissions. This was point was also addressed by Judge Weinstein in *Blue Cross and Blue Shield of New Jersey v. Phillip Morris, Inc.*, 113 F. Supp. 2d 345 (E.D.N.Y. 2000), in which he found that:

> Detrimental reliance alone is not sufficient to make out a fraud claim; rather, the reliance must be justified under the circumstances. *See, e.g., Eagle Comtronics, Inc. v. Pico Products*, 270 A.D.2d 832, 705 N.Y.S.2d 758, 759-60 (2000) ("In order to prevail on the fraud cause of action, [plaintiff] had to establish that the alleged misrepresentations or omissions were material and that [it] actually and justifiably relied on them to its detriment."); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11, 13 (1st Dept.1996) ("It is well-settled that in order to demonstrate fraud, plaintiffs must establish ... justifiable reliance ...."); *see generally* Dan B. Dobbs, The Law of Torts §§ 474-75 (justifiable reliance).

It cannot reasonably be supposed that Empire-given both its financial incentive to determine the true health effects of smoking and the myriad of resources at its disposal to do so-could have been justified in relying on any misrepresentations of Tobacco regarding the health effects of smoking. *See, e.g., Pinney v. Beckwith*, 202 A.D.2d 767, 608 N.Y.S.2d 738, 739 (3d Dept.1994) ("It is well settled that 'if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.' " (*quoting Schumaker v. Mather*, 133 N.Y. 590, 596, 30 N.E. 755 (1892))); *id.* ("[A] simple inquiry to the Town, the barest of precautions, would have armed plaintiffs with the truth concerning the claimed preliminary subdivision approval."); *see also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) ("[R]eliance must be found to be justifiable under all the circumstances before a complaint can be found to state a cause of action in fraud"). Empire's direct fraud action is dismissed.

*Id.* at 385-386.  Given the voluminous number of claims for DME that Allstate receives annually on a nation-wide basis and light of the sophistication of their computerized records it defies credibility that Allstate alleges that it was unaware of the cost of DME.  Similarly, with regard to Allstate's allegations regarding the purported use of incorrect billing codes, Allstate's claim representatives are surely well-versed in ascertaining whether the description of the item presented matches the billing code.

Allstate fails to state with specificity the "omitted material facts" and "misleading statements" the doctors and PC Defendants allegedly made.  A cause of action alleging fraud must be pleaded with specificity.  *See* Fed. R. Civ. P. 9(b); *Zhu*, 2005 WL 2757536, at *4. Here, Allstate has failed to properly plead the elements of misrepresentation of a material fact or scienter in their Complaint with specificity, as the Amended Complaint did not contain any factual allegations showing that the moving Defendants made representations concerning a material fact which was false and known by the defendant to be false at the time it was made and that the defendant made the representation with the purpose of inducing the plaintiff to rely upon it. *See Nationscredit Fin.*

22

*Servs. Corp. v. Turcios*, 55 A.D.3d 806, 866 N.Y.S.2d 690; *Maisano v. Beckoff*, 2 A.D.3d 412, 767 N.Y.S.2d 790.  In the complaint Allstate only sets forth in general that these elements were met.

Allstate is alleging that it "did in fact reasonably and justifiably rely" on these representations made by Defendants. Compl., at ¶484.  Based on the Amended Complaint, Allstate had "knowledge" of their alleged improper misrepresentations contained in the billing and had the ability to properly verify the amounts at issue, but chose to pay the claims instead.  Allstate cannot now claim that its reliance in making the payments was justified or reasonable. As such, Allstate's state law fraud claim must be should be denied in its entirety.

**POINT V**

**THE COMPLAINT DOES NOT STATE A LEGAL CAUSE OF ACTION FOR UNJUST ENRICHMENT OR AIDING AND ABETTING**

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481 (2d Dept. 2004).  Unjust enrichment is an equitable remedy which cannot be utilized to recover moneys governed or controlled by contract, regulation or statute.

The matters in controversy between the parties are governed by the provisions of the no-fault statutory scheme as well as the assignment of the benefits pursuant to the automobile insurance policy issued by the Plaintiffs.  The insurance policy is the contract that exists between the parties.

Allstate cannot recover pursuant to an equitable remedy in the presence of such facts.  It is well settled that quasi-contract theories are not available where contractual obligations exist. Contract and quasi-contract remedies are alternative and not duplicative remedies.  *Apfel v. Prudential Bache Securities, Inc.*, 81 N.Y.2d 470, 479 (1993).

Accordingly, Plaintiffs cause of action for unjust enrichment must be dismissed.  Further, as there can be no causes of action for fraud alleged as outlined above, Defendants could not have engaged in aiding and abetting.

### CONCLUSION

For all the foregoing reasons the Amended Complaint should be dismissed as against the moving Defendants should be granted in its entirety, together with such other and further relief as the Court deems just and equitable.

Dated: Garden City, New York
      November 4, 2011

Respectfully submitted,

BLODNICK, CONROY, FAZIO & DIGLIO, P.C.
*Attorneys for Defendants Yakov Aminov, GNK Medical*
*Supply, Inc., and Highlawn Best Medical Supply, Inc.*
1325 Franklin Avenue
Suite 555
Garden City, New York 11530
(516) 280-7105

To:    Stern & Montana, LLP
       115 Broadway
       New York, NY 10004