UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ALLSTATE INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY, AND ALLSTATE NEW
JERSEY INSURANCE COMPANY,

Plaintiffs,

AMNER KHAIMOV, ZOYA AMINOVA, MURDAKHAY
KHAIMOV, ALBERT KHAIMOV, YAKOV AMINOV, ILYA
TAMAYEFF, ABRAHAM LAYLIEV, ROBERT TERDJANIAN,
GALINA VOVK, A/K/A VALENTINA BABUCEA, VLADISLAV
AGUVAYEV, OLEG SIMAKOV, SERGEY MEZKULA, GRIGOL
APRESYANTSI, MARIFAT DAVLATKHONOVA, MICHAEL
ZAVRAZHIN, LAPERLA SUPPLY, INC., F/K/A NEW
MILLENNIUM SUPPLY, INC., PARSONS MEDICAL SUPPLY,
INC., JAMAICA MEDICAL SUPPLY, INC., QUEENS MEDICAL
SUPPLY, INC., GRAND MEDICAL SUPPLY, INC., ROYAL
MEDICAL SUPPLY, INC., UTOPIA EQUIPMENT, INC., GNK
MEDICAL SUPPLY, INC., HIGHLAWN BEST MEDICAL
SUPPLY, INC., NEW CAPITAL SUPPLY, INC., AVR MEDICAL
SUPPLY, INC., FRAZIER TRADING CO., INC., A TO Z
WHOLESALE, INC., BULLS EYE WHOLESALE, INC., E-Z
SUPPLY, INC., GLOBAL BEST DEAL, INC., GRIGOL SUPPLY,
INC., HONO OFFICE SUPPLY, INC., MEDCURE SUPPLIES,
INC., TELYA CORP., MAJOR MARKET MERCHANDISE,
INC., VZ GROUP, INC., JOHN DOES 1 THROUGH 20 AND ABC
CORPORATIONS 1 THROUGH 20,

ll-CV-2391 (JG)(JMA)

Defendants.

-------------------------------------------------------------------------X

---

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

---

STERN & MONTANA, LLP
ATTORNEYS FOR PLAINTIFFS
TRINITY CENTRE
115 BROADWAY
NEW YORK, NEW YORK 10006
212-532-8100

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ *i*

TABLE OF AUTHORITIES ................................................. *ii, iii, iv, vi*

INTRODUCTION .................................................................................... 1

STATEMENT OF RELEVANT FACTS ................................................ 4

STANDARD OF REVIEW ...................................................................... 6

    I.     PLAINTIFFS HAVE SUFFICIENTLY PLED THE
           RICO CAUSES OF ACTION........................................... 8

          A.  Plaintiffs Have Properly Alleged GNK Medical Supply
              and Highlawn Medical Supply are RICO Enterprises .............. 9

          B.  Plaintiffs Have Properly Alleged That Aminov is a
              RICO Person Distinct From the GNK Medical Supply
              and Highlawn Medical Enterprises ......................................... 12

          C.  Plaintiffs Have Properly Alleged Mail Fraud........................ 14

          D.  The Complaint's Allegations of Fraud Are Pled
              With Particularity ................................................................... 21

          E.  The RICO Claims Alleged Against Moving Defendants
              Are Not Time Barred .............................................................. 22

    II.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED COMMON
           LAW FRAUD ................................................................. 22

    III.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED
           UNJUST ENRICHMENT.............................................. 24

    IV.   TO THE EXTENT THAT THE COURT FINDS A
           DEFECT IN THE COMPLAINT, PLAINTIFFS REQUEST
           LEAVE TO AMEND .................................................... 25

CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

Cases

*131 Main St. Associates v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995)..............................15

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370
(E.D.N.Y. Feb. 22, 2005) .................................................................. 3, 14, 18, 24

*Allstate Ins. Co. v. Ahmed Halima, 06-CV-1316 DLI/SMG, 2009 WL 750199
(E.D.N.Y. Mar. 19, 2009)* ................................................................................24

*Allstate Ins. Co. v. Belt Parkway Imaging, Inc.,* Index No. 600509/03 (Sup. Ct.
N.Y. Co. Mar. 15, 2004)....................................................................................2

*Allstate Ins. Co. v. Belt Parkway Imaging, P.C.*, Index No. 600509/2003 (Index
No. 600509/03 (Sup. Ct. N.Y. Co. Dec. 22, 2004) ..............................................2, 25

*Allstate Ins. Co. v. Bogoraz*, 10-CV-5286 SJF ETB, 2011 WL 2421045
(E.D.N.Y. June 10, 2011) ...................................................................................24

*Allstate Ins. Co. v. Etienne*, 09-CV-3582 SLT RLM, 2010 WL 4338333
(E.D.N.Y. Oct. 26, 2010) ...................................................................................10

*Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384 (E.D.N.Y. 2008) ...................... 13, 14, 24

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F. Supp. 2d 335
(E.D.N.Y. 2008) ...............................................................................................3

*Antonios A. Alevizopoulos & Associates, Inc. v. Comcast Int'l Holdings, Inc.*,
100 F. Supp. 2d 178 (S.D.N.Y. 2000) ..................................................................22

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ......................6

*Bath Med. Supply, Inc. v. Allstate Indem. Co.*, 27 Misc. 3d 92, 902 N.Y.S.2d 875
(App. Term 2010)..............................................................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)..............................................................................................................7

*Carnegie Hill Orthopedic Services P.C. v. GEICO Ins. Co.*, 19 Misc. 3d
1111(A), 862 N.Y.S.2d 813 (Sup. Ct. 2008) ..........................................................3

*Cedric Kushner Promotions, Ltd. v. King*, 219 F.3d 115 (2d Cir. 2000)...........9, 11, 12, 13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir.
1999) ...............................................................................................................16

*Daniel v. Long Island Hous. P'ship, Inc.*, 08-CV-01455 JFB/WDW, 2009 WL
702209 (E.D.N.Y. Mar. 13, 2009).........................................................................7

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ...................................... 7

*Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 10 N.Y.3d 556, 890
N.E.2d 233 (2008) ............................................................................................. 2

*Fair Price Med. Supply Corp. v. Travelers Indem. Company*, 9 Misc.3d 76, 803
N.Y.S.2d 337 (N.Y.Sup.App. Term 2005) ......................................................... 2

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ................. 10, 11, 21

*First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480 (S.D.N.Y. 1997) ................................. 7

*FragranceNet.com. Inc. v. Fragrancex.com. Inc.*, 679 F. Supp. 2d 312 (E.D.N.Y.
2010) ....................................................................................................................... 6

*Gelles v. TDA Indus., Inc.*, 90 CIV. 5133 (MBM), 1991 WL 39673 (S.D.N.Y.
Mar. 18, 1991) ...................................................................................................... 8

*Giuliano v. Everything Yogurt, Inc., 819 F. Supp. 240 (E.D.N.Y. 1993)* ............................................ 21

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 00 CIV.
8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)......................... 8

*Govt. Employees Ins. Co. v. Hollis Med. Care P.C.*, 10-CV-4341 (ILG) No. 35 at
fn 6. (E.D.N.Y., Nov. 9, 2011) ......................................................................... 11

*Gross v. Waywell*, 628 F. Supp. 2d 475, (S.D.N.Y. 2009) ................................................................... 9

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,  109 S. Ct. 2893, 106 L. Ed. 2d 195
(1989)........................................................................................................ 15, 16, 17

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 00 CIV. 7804 (LMM),
2004 WL 487222 (S.D.N.Y. Mar. 12, 2004).................................................... 22

*Indep. Drug Wholesalers Group, Inc. v. Denton*, 833 F. Supp. 1507 (D. Kan.
1993) ................................................................................................................... 16

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).................................................................................. 7

*Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., Inc.*, CV-07-715, 2008
WL 1787684 (E.D.N.Y. Apr. 17, 2008) ........................................................... 25

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992)............................................................... 16

*First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co.*, 730 F. Supp. 501
(E.D.N.Y. 1990) ................................................................................................. 18

*Moore v. Paine Webber, Inc.*, 189 F.3d 169,  173 (2d Cir. 1999) .............................................. 7, 19

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, (2d Cir. 1983)................................................................ 8

*Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc.*, 932 F. Supp. 422 (E.D.N.Y. 1996) ................................................................................................................ 16

*Oliver Sch., Inc. v. Foley*, 930 F.2d 248 (2d Cir. 1991) .................................. 25

*Pavlov v. Bank of New York Co., Inc.*, 25 F. App'x 70 (2d Cir. 2002) ............ 10

*Pommells v. Perez*, 4 N.Y.3d 566, 830 N.E.2d 278 (2005) .............................. 3

*Progressive Ne. Ins. Co. v. Advanced Diagnostic & Treatment Med., P.C.*, (Sup. Ct. N.Y. Co. Aug. 2, 2001) .................................................................... 2

*Ray v. Gen. Motors Acceptance Corp.*, CIV.A.CV-925043(DGT), 1995 WL 151852 (E.D.N.Y. Mar. 28, 1995)..................................................................... 20

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994) ....................................................................................................... 12

*Schwab v. Philip Morris USA, Inc.*, CV 04-1945 (JBW), 2005 WL 2467766 (E.D.N.Y. Oct. 6, 2005) .................................................................................. 22

*State Farm Mu. Ins. Co. v. CPT Medical Services, P.C.*, 2008 WL 4146190 (E.D.N.Y. 2008) .............................................................................. 3, 14, 19, 24

*State Farm Mut. Auto Ins. Co. v. Mallela, 175 F. Supp. 2d 401 (E.D.N.Y. 2001)* ...... 2

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, CV2007-0051(ENV)(MDG, 2007 WL 2908205 (E.D.N.Y. Oct. 4, 2007) ...................... 22

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*, 04CV5045(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) ........................................... 3, 14

*State Farm Mut. Auto. Ins. Co. v. Eastern Med., P.C.*, (E.D.N.Y. Docket No. CV 05-3804, Dec. 20, 2010) .................................................................................. 13

*State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212 (E.D.N.Y. 2009) .............. 21, 23, 24

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221 (E.D.N.Y. 2008) ................................................................................. 3, 21, 25

*State Farm Mut. Auto. Ins. Co. v. Robert Mallela*, 4 N.Y.3d 313 (2005).......... 3

*State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) ................................................................................................................ 24

*State Farm Mutual Auto Ins. Co. v. Grafman*, No. 04-CV-2609 (E.D.N.Y. 5/22/07) ............................................................................................................ 3

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) ................................... 16

iv

*United States v. Blankenship*, 746 F.2d 233  (5th Cir. 1984) ........................................ 15

*United States v. Bortnovsky*, 879 F.2d 30 (2d Cir. 1989) ................................................ 15

*United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991)................................................. 16

*United States v. Cline*, 655 F. Supp. 796 (M.D. La. 1987)............................................. 15

*United States v. O'Connor*, 910 F.2d 1466 (7th Cir. 1990)............................................ 17

*United States v. Turkette*, 452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) ......... 10

*Vaughn v. Consumer Home Mortgage, Inc.*, 01-CV-7937(ILG), 2003 WL
    21241669 (E.D.N.Y. Mar. 23, 2003)......................................................................... 8

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d
    Cir. 2008) ............................................................................................................... 6

Statutes

18 U.S.C.A. § 1961(1) ...................................................................................................... 4

18 U.S.C.A. § 1961(4) .................................................................................................... 10

18 U.S.C.A. § 1961(5) .................................................................................................... 14

18 U.S.C.A. § 1961(c) .................................................................................................... 14

18 U.S.C.A. § 1962 ........................................................................................................... 9

18 U.S.C.A. § 1962(a)-(c)......................................................................................... 2, 3, 8, 9

18 U.S.C.A. § 1962(d) ...................................................................................................... 2

18 U.S.C.A. § 1964(c) ...................................................................................................... 9

18 U.S.C.A. §1341 ........................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 6

Fed. R. Civ. P. 8(a) .......................................................................................................... 8

Fed. R. Civ. P. 9(b) ...................................................................................................*passim*

N.Y. Ins. Law § 5106 ....................................................................................................... 2

## INTRODUCTION

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company (collectively "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants GNK Medical Supply, Inc., ("GNK Medical Supply"), Highlawn Best Medical Supply, Inc. ("Highlawn Best Medical Supply") and Yakov Aminov's ("Aminov") (collectively referred to as the "Moving Defendants") Motion to Dismiss (Docket No. 48) the Complaint's Twentieth and Twenty-First Claims for Relief as to Defendant Aminov and Twenty-Second and Twenty-Third Claims for Relief as to Defendants Aminov, GNK Medical Supply and Highlawn Medical Supply pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure For the reasons set forth herein, the Moving Defendants' Motion to Dismiss should be denied in its entirety.

The Moving Defendants' Motion is no more than a rehashing of arguments that have been argued and repeatedly rejected by the federal courts in the Eastern and Southern Districts of New York as well as by state courts. In addition to marching out the same tired, retread arguments that plainly lack merit, the Moving Defendants' motion papers, which include misstated facts, reliance on inapplicable law and meaningless conjecture, contain arguments that were made in support of motions for dismissal in *other* actions that have no relevance to the Complaint in *this* case. Indeed, a fair reading of Moving Defendants' papers suggests that they never even bothered to read the Complaint prior to filing their motion. For example, Moving Defendants seek dismissal of the Complaint's 18 U.S.C.A. § 1962(d) RICO conspiracy claims notwithstanding that the Complaint *does not* include any such claim. They also seek dismissal of the Complaint's "aiding and abetting" claims despite the fact that *no* such claims are alleged against them.[1]  In addition, they argue that

---

[1] As against the Moving Defendants, the Complaint is limited to alleging the following causes of actions: RICO pursuant to 18 U.S.C.A. § 1962(c) (Claims Twenty and Twenty-One), Common Law Fraud (Claim Twenry-Two) and

1

Plaintiffs' RICO claims must be dismissed based on the four-year statue of limitations notwithstanding that the Complaint's allegations against them did not arise until 2008 (Complaint at ¶¶ 450, 465), which only serves to underscore that this argument, along with the others, was based on a *pro forma* motion, rather than on deliberate consideration of the pleading at issue. Moreover, the Moving Defendants seek dismissal of Plaintiffs' 18 U.S.C.A. § 1962(c) RICO claims based on the Plaintiffs' alleged failure to sufficiently plead an association-in-fact enterprise when, in fact, the Complaint alleges no such enterprise; rather, the RICO claims contained in the Complaint, including against the Moving Defendants, allege only legal entity enterprises in which a single corporation is the alleged enterprise for each RICO claim. Aside from seeking dismissal based on an association-in-fact enterprise that is not pleaded, even there, the Moving Defendants rely on case law that would have been unavailing had the Complaint alleged one. [2]

---

Unjust Enrichment (Claim Twenty-Three). Those causes of action do not seek to hold the Moving Defendants liable under a theory of aiding and abetting or conspiracy.

[2] In addition, although only mentioned in passing in a single sentence in their preliminary statement, the Moving Defendants maintain that the Plaintiffs are circumventing the "No-Fault laws through the avoidance of the required procedure which requires that Plaintiffs promptly deny claims within 30 days." Docket No. 48 at 2 (*citing Bath Med. Supply, Inc. v. Allstate Indem. Co.*, 27 Misc. 3d 92, 902 N.Y.S.2d 875 (App. Term 2010) and *Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 10 N.Y.3d 556, 890 N.E.2d 233 (2008). Though not explicitly stated, it appears that the Moving Defendants assert implicitly that plaintiffs may be barred from bringing their affirmative recovery claims based on fraud and unjust enrichment. To the extent such argument is being asserted, it flies in the face of the unanimous New York (including the Appellate Term in *Fair Price*) and federal court precedent holding that N.Y. Ins. Law § 5106 has no relevance to affirmative recovery actions. *See Fair Price Med. Supply Corp. v. Travelers Indem. Company*, 9 Misc.3d 76, 803 N.Y.S.2d 337, 340 (N.Y.Sup.App. Term 2005) *aff'd*, 42 A.D.3d 277, 837 N.Y.S.2d 350 (2007) *aff'd*, 10 N.Y.3d 556, 890 N.E.2d 233 (2008) (*recognizing*, in the context of the defense of a claim by a provider to recover No-fault benefits, the 30-Day Rule barred assertion of billing fraud as a defense, the insurer "is not without remedy; after paying such a claim, the insurer, for example, may have an action to recover benefits paid under a theory of fraud or unjust enrichment."); *Allstate Ins. Co. v. Belt Parkway Imaging, Inc.*, Index No. 600509/03 (Sup. Ct. N.Y. Co. Mar. 15, 2004), at pp. 16-17. A copy of the aforementioned decision is annexed to the Declaration of Robert A. Stern (the "Stern Declaration") as Exh. "A"; *Allstate Ins. Co. v. Belt Parkway Imaging, P.C.*, Index No. 600509/2003 (Index No. 600509/03 (Sup. Ct. N.Y. Co. Dec. 22, 2004), at p. 7. A copy of the aforementioned decision is annexed to the Stern Declaration as Exh. "B"); *Allstate Ins. Co. v. Belt Parkway Imaging, P.C.*, 11 Misc. 3d 810, 813 N.Y.S.2d 867 (Sup. Ct. 2006); *Progressive Ne. Ins. Co. v. Advanced Diagnostic & Treatment Med., P.C.*, (Index No. 60112/00, Sup. Ct. N.Y. Co. Aug. 2, 2001) (*finding* that common law fraud and unjust enrichment claims *not* barred by N.Y. Ins. Law § 5106). A copy of the aforementioned decision is annexed to the Stern Declaration as Exh. "C;" *State Farm Mut. Auto Ins. Co. v. Mallela*, 175 F. Supp. 2d 401 (E.D.N.Y. 2001) (*noting* "skepticism" of Moving Defendants' argument here); *State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. March 31, 2006) (Report and Recommendation of Magistrate Judge Pollack adopted by Judge Amon on March 31, 2006 *denying* dismissal motion based on N.Y. Ins. Law § 5106 because where an insurer complies with the 30-day Rule and makes a timely payment, there appears to be no policy that would seek to protect an insured or health care provider who has submitted false claims as part of a scheme to defraud the insurer.). A copy of the aforementioned decision is annexed to the Stern

Notwithstanding the foregoing, to the extent that Moving Defendants state arguments that are actually related to the allegations in the Complaint in *this* case, all of those arguments have been soundly rejected by this Court in decisions in similar cases, in most of which counsel for Moving Defendants also appeared, meaning they knew that the same specious arguments raised in the Motion filed in this action had been wholly rejected by numerous courts in other actions.[3] The result should be no different here. For the reasons set forth herein, it is respectfully requested that Moving Defendants' Motion be denied in its entirety.[4]

---

Declaration as Exh."D;" *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F. Supp. 2d 335 (E.D.N.Y. 2008) D;" *Carnegie Hill Orthopedic Services P.C. v. GEICO Ins. Co.*, 19 Misc. 3d 1111(A), 862 N.Y.S.2d 813 (Sup. Ct. 2008) (affirmative action not precluded). A copy of the aforementioned decision is annexed to the Stern Declaration as Exh. "E"; *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F.Supp. 2d 335 (E.D.N.Y. 2008); *State Farm Mu. Ins. Co. v. CPT Medical Services, P.C.*, 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) (*deferring* to the interpretation of the No-fault Insurance Laws by the New York State Department of Insurance and holding that the Plaintiff insurer was not precluded from bringing an action alleging fraud and unjust enrichment merely because it did not discover the defendants' alleged fraud within the thirty day claims period.). A copy of the aforementioned decision is annexed to the Stern Declaration as Exh. "F"; *State Farm Mutual Auto Ins. Co. v. Grafman*, No. 04-CV-2609 (E.D.N.Y. May 22, 2007) (*finding* that the 30-Day Rule does not bar affirmative claims of fraud by an insurer who previously paid on the claims.). A copy of the aforementioned decision is annexed to the Stern Declaration as Exh. "G"; *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d, 225 (*rejecting* argument that insurer is precluded from bringing affirmative recovery action under N.Y. Ins. Law § 5106 and *agreeing* with the thorough and well-reasoned analyses in the prior federal cases in finding that Plaintiffs' fraud claim is not barred under New York law by the 30-Day Rule.). Just as the unanimous courts cited above have resoundingly rejected the argument alluded to by the Moving Defendants, this Court should as well.

[3] *See e.g., State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*, 04CV5045(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008), No. 04 CV 5045 (ILG) (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 225 (E.D.N.Y. 2008*); Allstate Ins. Co. v. Halima*, 2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009). A copy of the *Haima* decision is annexed to the Stern Declaration as Exh. "H"; *State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006); and *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005). A copy of the *Olmecs Med. Supply, Inc.* decision is annexed to the Stern Declaration as Exh. "I."

[4] Moving Defendants' diatribe as to Plaintiffs' motivation for filing this suit in general, and in the Eastern District of New York, in particular, is baseless. (Docket No. 48 at 1-2). As such baseless conjecture does not address any alleged infirmity with the pleadings and is irrelevant for the purposes of the instant motion, Plaintiffs will not respond in kind, except to note that (1) the case law cited throughout this memorandum demonstrates that the federal courts have long been recognized as the proper forum for insurers to seek redress from No-fault based billing fraud schemes that operate as RICO enterprises and (2) the New York Court of Appeals has thrice recognized that the No-fault industry is plagued by systematic fraud. *State Farm Mut. Auto. Ins. Co. v. Robert Mallela*, 4 N.Y.3d 313, 320, 827 N.E.2d 758 (2005), 100 N.Y.2d 854, 860-61 (2003); *Pommells v. Perez*, 4 N.Y.3d 566, 571-72, 830 N.E.2d 278 (2005); *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005). As for this action being filed in the Eastern District of New York, it is sufficient to note that *all* eleven corporate-RICO enterprises alleged in the Complaint, including GNK Medical Supply and Highlawn Medical Supply, have their principal places of business located in the Eastern District of New York. *See* Docket No. 10 at ¶¶ 63-73.

## STATEMENT OF RELEVANT FACTS

On or about May 18, 2011, Plaintiffs commenced this action against the Moving Defendants (and others) alleging, *inter alia,* violations of the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 *et seq.* and New York State common law. *See* Docket No 1.   On or about August 3, 2011, Plaintiffs filed the First Amended Complaint (the "Complaint"), which changed Plaintiff Allstate New Jersey Insurance Company's principal place of business from New Jersey to Illinois, but is otherwise identical to the original complaint. *See* Docket No. 10. With respect to the Moving Defendants, the Complaint alleges, among other things, that they participated in the mechanics and execution of massive parallel schemes to defraud in which Aminov, through GNK Medical Supply and Highlawn Best Medical Supply, which purport to be legitimate durable medical equipment ("DME") retailers, submitted hundreds of fraudulent insurance claims for DME and orthotic devices to Plaintiffs for reimbursement pursuant to the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, N.Y. Ins. Law § 5101 *et seq.* (popularly known as the "No-fault Law"). *See* Docket No. 10 at ¶¶ 2, 70-71, 451, 457, 466 and 472.

Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for necessary health service expenses that are incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians ("Claimants") and that arise from the use or operation of such motor vehicles in the State of New York.  Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their services.  As described in the Complaint, the Moving Defendants exploited that system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed, or if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided, and/or

were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices.

In that regard, as set forth within the body of the Complaint, as well as in its numerous Exhibits and tables setting forth a representative sample of predicate acts, Defendant Aminov, through GNK Medical Supply and Highlawn Best Medical Supply, abused the No-fault Law though various fraudulent billing practices, including routinely submitting bills to Plaintiffs that misrepresented that: (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Moving Defendants were utilizing phantom codes for which there was no published fee schedule; (ii) the charges reflected on the Moving Defendants' bills for Non-Fee Schedule items was the lesser of their acquisition costs, plus 50% or the usual and customary price charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Moving Defendants' bills corresponded with the equipment purportedly provided. *See e.g., id.* at ¶¶ 169-71, 173, 177, 179, 182-83 and Exhibits 3, 6-8, 11-16 and 18-19.

In addition, as set forth in the Complaint, Defendant Aminov, through GNK Medical Supply and Highlawn Best Medical Supply, also routinely submitted fraudulent bills to Plaintiffs in support of claims for (i) expensive custom-fitted DME and/or orthotic devices, such as lumbar sacral orthosis ("LSOs") and knee, wrist, elbow and shoulder braces that were never provided; (ii) expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed; and (iii) reimbursement of DME and/or orthotic devices in excess of the relevant fee schedule in existence at the time. *See e.g., id.* at ¶¶ 189, 194-98, 201-04, 206-08, 210-12, 214, 217, 221-22, 224, 226-28, 231, 233-35, 240-41, 243-44 and Exhibits 3, 5, 9-10, 24-27, 30-34, 36-38 and 40-41. Each of those bills materially misrepresented the nature, cost and quality of the DME and/or

orthotic device purportedly provided, to the extent the items were provided at all. *Id.* at ¶¶ 25, 27, 28, 110, 112, 157, 163, 170, 173, 177 and 481.

Defendant Aminov was the record owner of GNK Medical Supply and Highlawn Best Medical Supply and in that capacity controlled the day-to-day operations of those DME retailers, including, among other things, negotiating the office lease for their operations at 118-40 Metropolitan Avenue, Kew Gardens, NY  and 134 Highlawn Avenue, Brooklyn NY, 11223 respectively; maintaining the physical office space and operation; entering into kickback arrangements with No-fault clinics to obtain DME prescriptions and wholesalers necessary to carry out the scheme to defraud alleged in the complaint; generating the fraudulent invoices that were submitted to insurers that included misrepresentations as to the nature, cost and quality of DME purportedly provided to Plaintiffs' insureds; and maintaining their financial operations and books and records. *See e.g.,* Docket No. 10 at ¶¶ 110, 126, 135 and 147.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d Cir. 2008) (internal citation omitted).  The court's function on a 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient. *FragranceNet.com. Inc. v. Fragrancex.com. Inc.*, 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010) (internal quotations and citations omitted).

In order for a complaint's allegations to be sufficient, a plaintiff must satisfy a flexible "plausibility" standard that obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. *Iqbal v. Hasty*, 490

F.3d 143, 157-58 (2d Cir. 2007) (*holding* that determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.). Accordingly, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*finding* that to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true even if doubtful in fact.). Moreover, the "plausibility" requirement does not mandate a universal standard of heightened fact pleading. *Daniel v. Long Island Hous. P'ship, Inc.*, 08-CV-01455 JFB/WDW, 2009 WL 702209 (E.D.N.Y. Mar. 13, 2009) (*holding* that the Court does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face) (internal quotation marks and citation omitted).

Moreover, in cases that allege RICO claims for which fraud is a predicate act, Fed. R. Civ. P. 9(b) requires that the circumstances constituting allegations of the fraud be stated with particularity, while malice, intent, knowledge and other conditions of the mind may be averred generally. *See, e.g., Moore v. Paine Webber, Inc.*, 189 F.3d 169, 172, 173 (2d Cir. 1999) (*holding* that in the RICO context, Fed. R. Civ. P. 9(b) calls for the complaint to specify the statements it claims were false and misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.). However, a complaint in a RICO action need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants. *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997), *citing DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). To that end, a plaintiff need not plead dates, times and places with absolute precision, so long as the

complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based. *Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 00 CIV. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) (citations omitted) (*finding* that in analyzing the sufficiency of a pleading under Fed. R. Civ. P. 9(b), a district court must balance the rule with both Fed. R. Civ. P. 8(a) which requires only a short and plain statement of the claims for relief and Fed. R. Civ. P. 8(f), which provides that all pleadings shall be so construed as to do substantial justice.). Thus, Fed. R. Civ. P. 9(b) "does not require that a complaint plead fraud with the detail of a desk calendar or a street map." *Gelles v. TDA Indus., Inc.*, 90 CIV. 5133 (MBM), 1991 WL 39673 (S.D.N.Y. Mar. 18, 1991). *See also Vaughn v. Consumer Home Mortgage, Inc.*, 01-CV-7937(ILG), 2003 WL 21241669 (E.D.N.Y. Mar. 23, 2003) (citations omitted) (*holding* that "the acid test is whether the allegations satisfy the primary concern behind Fed. R. Civ. P. 9(b), which is that defendants are put on notice of what they are accused of, so that they are reasonably able to respond and mount a defense."). When applying the above standard to the facts at bar, it is respectfully submitted that Moving Defendants' Motion should be denied.

## I.
## PLAINTIFFS HAVE SUFFICIENTLY PLED THE RICO CAUSES OF ACTION

In order to state a claim for a violation of RICO, a plaintiff must allege: "1) that the defendant; 2) through the commission of two or more acts; 3) constituting a pattern; 4) of racketeering activity; 5) directly or indirectly invests in, or maintains an interest in, or participates in; 6) an enterprise; 7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *quoting* 18 U.S.C.A. § 1962(a)-(c). Additionally, in order to invoke RICO's civil remedy of treble damages, attorneys' fees and costs, a plaintiff must allege that it was "injured in its business or property by reason of a violation of 18 U.S.C.A. § 1962." *Id., quoting* 18 U.S.C.A. § 1964(c). Moreover, there is an additional

requirement under 18 U.S.C.A. § 1962(c) that a RICO defendant and the enterprise must be distinct. *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 219 F.3d 115, 116 (2d Cir. 2000) (*holding* that under 18 U.S.C.A. § 1962(c), the alleged RICO person and RICO enterprise must be distinct, a well-established rule in this Circuit.). Finally, "racketeering activity" is defined to include mail fraud. 18 U.S.C.A. §§ §1341, 1961(1).

At bar, Moving Defendants[5] claim that Plaintiffs' RICO causes of action should be dismissed because Plaintiffs fail to: (i) allege that the GNK Medical Supply and Highlawn Medical Supply enterprises are distinct from their alleged patterns of racketeering activity and their alleged RICO persons; and (ii) properly plead mail and wire fraud as RICO predicate acts.[6]  For the reasons set forth below, each of the foregoing arguments are wholly without merit.

### A.    Plaintiffs Have Properly Alleged GNK Medical Supply and Highlawn Medical Supply are RICO Enterprises

Moving Defendants' contention that Plaintiffs' Complaint is deficient because it fails to allege that GNK Medical Supply and Highlawn Medical Supply are enterprises that are distinct from their patterns of racketeering activity, Docket No. 48 at 13, is misplaced for three independent reasons.  First, since Plaintiffs allege that GNK Medical Supply and Highlawn Medical Supply are corporate entity RICO enterprises and *not* association-in-fact-enterprises, there is no requirement, nor has there even been, that Plaintiffs allege they be distinct from their alleged patterns of racketeering activity because when, as here, the enterprise is a legal entity, the enterprise will always be distinct from the pattern of racketeering activities.[7]    To the extent that an

---

[5] Although all three Moving Defendants' set forth arguments in support of dismissal of Plaintiffs' RICO claims, Defendant Aminov is the only Moving Defendant named in Plaintiffs' RICO causes of action.

[6] Since Moving Defendants' Motion does not attack the sufficiency of any of the other elements of Plaintiff's RICO pleading, there is no additional discussion relative to RICO to demonstrate that all other RICO pleading requirements have been satisfied.

[7] The RICO statute provides that an "enterprise" includes "legal entities," such as corporations like GNK and Highlawn, or "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 497 (S.D.N.Y. 2009), *citing to United States v. Turkette*, 452 U.S. 576, 581-2,

enterprise/pattern distinction was ever required in the Second Circuit, it was only required in instances where a plaintiff alleged an association-in-fact enterprise. *See, e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (citations and quotations omitted) (*finding* that where a complaint alleges an association-in-fact enterprise, courts in this Circuit look to the hierarchy, organization, and activities of the association to determine whether its members functioned as a unit.).[8]  At any event, to the extent that the enterprise/pattern distinction with respect to association-in-fact enterprises (which, as noted, is inapplicable here because no such enterprise is alleged) was ever a pleading requirement, the Supreme Court's holding in *Boyle v. United States*, 556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) abolished any such requirement by explicitly ruling that an association-in-fact RICO enterprise need not be ascertainably distinct from the alleged pattern of racketeering activity.[9]  *Id.* at 2240.

Second, as noted, the reason why the enterprise/pattern distinction requirement is never an issue when a legal entity enterprise is alleged is because that distinction is *always* satisfied when, as here, the alleged enterprises are corporations or other legal entities. As Justice Stevens noted in *Boyle*, "[i]n cases involving a legal entity, the matter of proving the enterprise element is straightforward, as *the entity's legal existence will always be something apart from the pattern of*

---

101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).  At bar, Plaintiffs allege that GNK and Highlawn are the former, *to wit*: legal entities (durable medical supply companies) authorized to do business in New York State. *See* Doc. No. 10 at ¶¶ 70-71.
[8] *But Cf. Pavlov v. Bank of New York Co., Inc.*, 25 F. App'x 70, 71 (2d Cir. 2002). 25 Fed Appx 70, 71 (2d Cir 2002) (*noting* that the Second Circuit has repeatedly found that an enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy, so long as it is in fact an enterprise as defined in the statute, a finding that is in complete agreement with the Supreme Court's ultimate holding in *Boyle*.).
[9]  The *Boyle* Court held that *Allstate Ins. Co. v. Etienne*, 09-CV-3582 SLT RLM, 2010 WL 4338333 (E.D.N.Y. Oct. 26, 2010) all that is required is that an association-in-fact enterprise have a structure that, under RICO's terms, has at least three features: a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle*, 129 S. Ct. at 2240.  *See also Allstate Ins. Co. v. Etienne*, RICO Bus Disp Guide 11950 (EDNY Oct. 26, 2010) (*noting* that in light of *Boyle*, it is not a requirement that an enterprise have some structural features such as hierarchy, role differentiation, a unique modus operandi, a chain of command, professionalism and sophistication of organization, or a diversity and complexity of crimes.)  A copy of the *Etienne* decision is annexed to the Stern Affirmation as Exhibit "J."

*activity* performed by the defendant or his associates.[10]  *Boyle*, 129 S. Ct. at 2249 (emphasis added);

*see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004)

(finding that the enterprise requirement is most easily satisfied when the enterprise is a formal legal

entity.); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 531 (S.D.N.Y. 2009) (same); *Cedric Kushner*

*Promotions, Ltd. v. King*, 533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001) (holding that an

employee who conducts the affairs of a corporation through illegal acts comes within RICO statue,

particularly when the statute itself explicitly defines "enterprise" to include a "corporation."); *Govt.*

*Employees Ins. Co. v. Hollis Med. Care P.C.*, 10-CV-4341 (ILG) No. 35 at fn 6. (E.D.N.Y., Nov. 9,

2011) *citing First Capital Asset Mgmt* in finding that since the plaintiff-insurer did not allege an

association-in-fact enterprise, the Court need not consider whether plaintiff sufficiently pleaded the

hierarchy, organization and activities of the alleged enterprise.).  A copy of the *Hollis Med. Care*

*P.C.* decision is annexed to the Stern Declaration as Exh. "K."

Finally, at bottom, even though there is not a pleading requirement that a RICO plaintiff

allege a distinction between the enterprise and the pattern of racketeering activity, Plaintiffs'

Complaint clearly alleges that the two were separate.  In that regard, the Complaint alleges with

specificity how Defendant Aminov and his co-defendants engaged in a multitude of activities in

furtherance of the GNK Medical Supply and Highlawn Medical Supply enterprises' schemes to

defraud which were distinct from the hundreds of acts of racketeering activity (mail fraud) in which

they participated.  In particular, the Complaint alleges, in meticulous detail, that Defendant Aminov

and his co-defendants (i) paid kickbacks to the No-fault Clinics in exchange for referrals of DME

---

[10] Justice Stevens issued a dissenting opinion in *Boyle*, though the substance of his dissent has no bearing on the well-established proposition of law attributed to him herein.  In particular, Justice Stevens dissented as it was his belief that since the RICO statute defines "enterprise" to include an "individual, partnership, corporation, association, or other legal entity," all of which describe entities with formal legal structures most commonly established for business purposes, then Congress also intended the term "enterprise" as used to define an association-in-fact structure to refer only to business-like entities that have an existence apart from the predicate acts committed by their employees or associates.  *Boyle*, S. Ct. at 2247.  As noted, the *Boyle* majority took a much more liberal approach to the definition of an association-in-fact enterprise. *See* fn. 4, *supra*.

and/or orthotic devices; (ii) obtained prescriptions that were provided pursuant to a predetermined course of treatment as opposed to medical need; (iii) paid fees (pursuant to the money laundering scheme described in the Complaint) to DME wholesalers in exchange for fraudulent wholesale invoices that GNK Medical Supply and Highlawn Medical Supply, in turn, would use to substantiate bogus claims for reimbursement of No-fault benefits; and (iv) arranged for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery of receipt forms signed by Claimants on their behalf to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular. See Docket No. 10 at ¶ 126.

Simply put, the GNK Medical Supply and Highlawn Medical Supply RICO enterprises would still exist if the alleged pattern of racketeering activity were removed from the equation, both as legal entities and as entities that carried out the aforementioned activities separate and apart from the predicate acts of mail fraud. Accordingly, there is no interpretation of the facts alleged in the Complaint or of the law that could lead to any conclusion other than that Plaintiffs have properly alleged the existence of the GNK Medical Supply and Highlawn Medical RICO enterprises.

**B.     Plaintiffs Have Properly Alleged That Aminov is a RICO Person Distinct From the GNK Medical Supply and Highlawn Medical Enterprises**

Moving Defendants make a similarly futile effort to discredit the Complaint's well-pled allegations with respect to the enterprise/person distinction.[11]   In the seminal case of *Cedric Kushner Promotions, Ltd.*, 533 U.S., 165 (which Moving Defendants cite to, but clearly do not understand), the Supreme Court held that in order for a plaintiff to satisfy the person/distinctness requirement, the RICO statute requires no more than a *formal legal distinction* between the RICO person and the RICO enterprise, and where the enterprises alleged are corporations (as is the case here), the RICO person/enterprise distinction requirement is satisfied simply by naming, as RICO

---

[11] As the Second Circuit noted in *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994), because a RICO defendant must conduct the affairs of a RICO enterprise through a pattern of racketeering activity, the RICO defendant and the RICO enterprise must be distinct.

persons, the corporations' owners or employees who engage in or conduct a pattern of racketeering activity through the corporate enterprise. *See Id.* at 162-163 (*finding* that the corporation owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its legal status, and nothing in the RICO statute requires more separateness than that.).

In light of the *Kushner* holding, judges within this District have uniformly denied motions to dismiss substantive RICO claims in similar cases where a corporation is alleged as the RICO enterprise and the corporation's owners, employees and/or agents are alleged as the RICO defendants who engaged in a pattern of fraudulent No-fault billing.  For example, in *Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384 (E.D.N.Y. 2008), a cases in which a plaintiff-insurer alleged a No-fault billing scheme involving corporate officers and employees as the RICO defendants and the corporations themselves constituted the RICO enterprises, the individual defendants moved to dismiss the complaint, arguing, *inter alia*, that there was a lack of distinctiveness between the RICO defendants and the alleged RICO enterprise. The Court, citing *Cedric Kushner Promotions, Ltd.*, denied the defendants' motion, noting that the legal distinction between the RICO enterprise (the corporate entity) and the RICO persons (the officers and employees of those corporations) is sufficient to satisfy the distinctiveness requirement.  *Rozenberg*, 590 F. Supp. 2d at 391.

Similarly, in *State Farm Mut. Auto. Ins. Co. v. Eastern Med., P.C.*, (E.D.N.Y. Docket No. CV 05-3804, Dec. 20, 2010), the plaintiff-insurer alleged that corporate officers and employees were the RICO defendants and that their corporations, two medical professional corporations through which the defendants allegedly submitted fraudulent No-fault billing, were the RICO enterprises. The defendants, in moving to dismiss, raised the same arguments as in *Rozenberg*, which the Court similarly rejected.  A copy of the *Eastern Med., P.C.* decision is annexed to the Stern Declaration as Exh. "L." Other cases are in accord, *see, e.g., Allstate Ins. Co. v. Halima*, 2009 U.S. Dist. LEXIS

22443 at *12-20 (E.D.N.Y. March 19, 2009); *State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 at *45-50 (E.D.N.Y. 2006), and the result should be no different here. Of course, for Moving Defendants to contend otherwise in the face of the aforementioned precedent, including the *Rozenberg and Kalika* cases, in which Moving Defendants' counsel appeared, is almost unimaginable.

### C.   Plaintiffs Have Properly Alleged Mail Fraud.

Moving Defendants also contend that Plaintiffs' RICO allegations are deficient because the Complaint fails to properly allege the predicate acts of mail fraud with the requisite particularity required pursuant to Fed. R. Civ. P. 9(b).  Once again, Moving Defendants' argument is foreclosed by well-established law, including in this District.

As noted above, facts demonstrating a pattern of racketeering activity are a requirement of a RICO allegation.  In that regard, racketeering activity is defined to include mail fraud (18 U.S.C.A. § 1961(c)), and a "pattern" is defined as at least two acts of racketeering activity occurring within 10 years of one another (18 U.S.C.A. § 1961(5)).  Moreover, as this Court explained in *State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*, 04CV5045(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) (in order to prove mail fraud, a plaintiff must allege: (1) the existence of a scheme to defraud involving money or property; (2) the use of the mails or wires in furtherance of the scheme;[12] and (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme. *CPT Med. Services*, at *11 (citations omitted).  In addition to the minimum number of two acts that must be pled to establish a mail fraud pattern, plaintiff must also establish that these

---

[12] To show that a defendant used the mails in furtherance of a scheme to defraud, he must show: 1) that the defendants caused the mailing or use of the wires, namely that they must have acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can reasonably be foreseen, even though not actually intended, and 2) that the mailing ... was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme. *CPT Med. Services* at *11 (citations omitted).  *See also Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) (setting forth the pleading requirements for mail fraud.).

"predicate acts" are "related," and that they amount to or pose a threat of continued criminal activity, as it "continuity plus relationship" that produces a "pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

Moreover, it is not necessary that the particular defendant have created or sent the mailing in question, so long as the defendant acted 'with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended. *See e.g., United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989). *See also 131 Main St. Associates v. Manko*, 897 F. Supp. 1507, 1530 (S.D.N.Y. 1995) (*finding* that the fact that the defendants did not personally drop the mailings in the mailbox is unimportant; all that matters is that they are alleged to have participated in an enterprise that foreseeable made use of the mails to perpetrate the fraud.). In that regard, insurance fraud schemes, by their very nature, involve the mailing of fraudulent insurance claims and the receipt by mail of the proceeds of those claims. Accordingly, in cases involving insurance fraud schemes, such as the ones described in the Complaint, the use of the mails is invariably found to be foreseeable. *See Bortnovsky*, 879 F.2d at 36 (*citing* cases from the First, Sixth, Seventh and Eighth Circuits and *finding* that the courts, when construing the mail fraud statute in the context of schemes to defraud an insurance company, have consistently held that mailings are foreseeable.); *United States v. Cline*, 655 F. Supp. 796, 799 (M.D. La. 1987) (*noting* that courts have found that it is reasonably foreseeable in insurance fraud cases that the mails would be used in processing claims and paying the insurance proceeds) (citing cases); *United States v. Blankenship*, 746 F.2d 233, 242 (5th Cir. 1984) (*stating* that material sent by mail was integral to the execution of the scheme where insurance company required such material before it could process the claim.). Applying these principles to the instant Complaint, it is indisputable that mail fraud, as pleaded by Plaintiffs, constitutes racketeering activity as defined by the RICO statute.

First, in order to satisfy the "continuity" prong, it must be demonstrated that: (1) the predicate acts occurred over a substantial period of time ("closed-ended" continuity) or (2) the acts establish a threat of continued racketeering activity in the future ("open-ended" continuity). *Id.* at 241-242.  Though racketeering activity occurring over a few weeks or months and threatening no future criminal conduct may not constitute a substantial period of time, the Second Circuit has held that predicate acts occurring over a period of two or more years (as did the GNK Medical Supply and Highlawn Medical Supply enterprises') certainly satisfy the requirements of closed-ended continuity.  *Id.* at 242; *see also Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (*holding* that a series of predicate acts extending over a two-year period constitutes a closed-ended pattern.).[13]

A scheme reflects "open-ended continuity" where the predicate acts by their nature project into the future with a threat of repetition, have become a regular way of doing business or are part of a long-term association that exists for criminal purposes. *H.J. Inc.*, 492 U.S. at 242-43; *see also Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc.*, 932 F. Supp. 422, 427 (E.D.N.Y. 1996).  In determining whether a plaintiff has satisfied the requirement of open-ended continuity, inquiry as to the nature of the RICO enterprise and the predicate acts is relevant.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999).  And, under an open-ended scheme, predicate acts committed over even very short periods of time are sufficient to form a RICO pattern, where the acts pose a threat of continuing criminal activity. *H.J. Inc.*, 492 U.S. at 241-43; *accord, e.g., United States v. Aulicino*, 44 F.3d 1102, 1110-14 (2d Cir. 1995) (finding that a pattern was established though acts occurred only over a period of some 3 ½ months.); *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) (*finding* that a pattern was established for predicate acts

---

[13] Federal courts outside this district have also recognized shorter periods of time as satisfying the closed-ended requirement. *See, e.g., Indep. Drug Wholesalers Group, Inc. v. Denton*, 833 F. Supp. 1507, 1518 (D. Kan. 1993). (*finding* that a pattern was found where there were numerous acts of mail and wire fraud directed at multiple victims over nine months, and defendant's involvement was "ongoing and not sporadic.").

committed over two-month period); *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990) (finding that a pattern was established over two-month period.).

Moreover, to satisfy the "relationship" prong of the mail fraud pattern requirement, it must be shown that the predicate acts involve the same or similar purpose, results, participants, victims, and methods of commission or are otherwise interrelated by distinguishing characteristics. *See H.J. Inc.*, 492 U.S. at 240.  At bar, the Complaint, in general, alleges that over the course of two and three years respectively, Defendant Aminov engaged in a pattern of racketeering activity and participated in and conducted the affairs of the Highlawn Medical Supply and GNK Medical Supply enterprises, the purposes of which was to defraud Plaintiffs into paying fraudulent bills submitted for DME and/or orthotic devices.  Defendant Aminov's participation in the alleged racketeering activity included hundreds, if not thousands, of acts of mail fraud engaged in on behalf of each enterprise, which, of course, are related since they were intended to further the same criminal enterprises.[14]  Moreover, Defendant Aminov's activities satisfy the continuity requirements of the mail fraud scheme because they occurred over a substantial period of time and pose a certain threat to continue into the future if not halted by civil or criminal prosecution.

Indeed, through the numerous specific examples set forth within the body of the Complaint, the Exhibits and in the Predicate Act tables annexed to the Complaint, Plaintiffs have shown that: over the course of three years with respect to the Highlawn Medical Supply enterprise and two years with respect to the GNK Medical Supply enterprise, on specified dates, the Moving Defendants mailed to Plaintiffs hundreds of false, fictitious, forged and otherwise fraudulent bills for DME and/or orthotic devices; the use of the mails in furtherance of Moving Defendants' schemes was a foreseeable and intended consequence of their schemes to defraud because they knew that the schemes involved the submission of fraudulent insurance claims and the fraudulent

---

[14] The Complaint specifically alleges that Highlawn Medical Supply and GNK Medical Supply are separate enterprises and sets forth separate representative patterns of racketeering activity with respect to each.

procurement of insurance monies; and Moving Defendants' scheme constituted continued criminal activity and poses a threat of continued criminal activity in the future; that Moving Defendants' criminal conduct involved the same purpose, results, participants, victims and methods of commission; that such conduct was knowingly designed to mislead Plaintiffs into believing that the DME and/or orthotic devices were actually and appropriately supplied; and that such did indeed mislead Plaintiffs into so believing and resulted in damage to Plaintiffs inasmuch as they paid Moving Defendants for fraudulent insurance claims.   Indeed, as alleged in the Complaint, the Defendants' knowing misrepresentations in the billing and other documents submitted to Plaintiffs resulted in Plaintiffs' reliance, which led directly to Plaintiffs' injury: the payment of substantial sums in fraudulent claims. *See, e.g., Metromedia Co.*, 983 F.2d at 368; *First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co.*, 730 F. Supp. 501, 513 (E.D.N.Y. 1990).

Furthermore, Moving Defendants' contention that Plaintiffs' Complaint is somehow deficient because copies of the actual mailings were not provided is absurd.   In complex civil RICO actions involving multiple defendants such as this, Fed. R. Civ. P. 9(b) does not to require that the "temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity," but only that the "plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) (citations omitted) (*finding* that, by alleging a complex scheme whereby defendants provided misleading documents in order to facilitate the submission of fraudulent bills to plaintiff-insurers, plaintiffs have undoubtedly described a plan to deprive a person of something of value by trick, deceit, chicane or overreaching.).

Plaintiffs here have not only described the nature of the fraudulent misrepresentations in the body of the Complaint (which would have sufficed), but also particularized the fraudulent

18

statements made by the defendants in detail by attaching numerous Exhibits and Predicate Act tables to the Appendix of the Complaint, which identify representative fraudulent mailings to each of the Plaintiffs by or on behalf of GNK Medical Supply and Highlawn Medical Supply. *See, e.g., Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (*finding* RICO allegations of mail fraud to satisfy Fed. R. Civ. P. 9(b) where the complaint contained a chart listing the mailings said to contain fraudulent representations, along with the dates of these mailings, and the persons responsible for the allegedly fraudulent statements are identified.).

In that regard, Moving Defendants' claim that Plaintiffs' Compliant and Appendix of Predicate Acts is somehow deficient because they "fail to draw any distinction between the bills" and "rely on blanket, uniform, statements" (Docket No. 48 at p. 16), is simply untrue. First, as was the case in *CPT Med. Services, P.C.*, the Predicate Act tables in this matter (i) indicate the dates upon which the fraudulent documents were submitted to Plaintiffs, (ii) identify the entities that submitted the mailings (GNK Medical Supply and Highlawn Medical Supply), (iii) included the claimants' initials and claim number, and (iv) include the nature of the misrepresentations. *See* Document No. 10 at Appendix. Moreover, in addition to the Predicate Act tables, Plaintiffs went even further by providing the Moving Defendants with Exhibits that set forth specific examples of fraudulent bills mailed to Plaintiffs in connection with the GNK Medical Supply and Highlawn Medical Supply enterprises, which include claim numbers, claimant initials, dates of service and the billing codes used. *See, e.g.*, Docket No. 10 at Exhs. 3, 5-16, 18-19, 24-27, 30-34, 36-38 and 40-41 (GNK Medical Supply); *id.* at *Exhs.* 3, 5-16, 18-19, 24-27, 36-38 and 40-41 (Highlawn Medical Supply). Indeed, combined with the well-pled allegations contained within the body of the Complaint which describe in great detail the specific nature of the fraud perpetrated by Moving Defendants (*see e.g., id.* at ¶¶ 25, 27, 28, 110, 112, 157, 163, 169-71, 173, 177, 179, 182-83, 189, 194-98, 201-04, 206-08, 210-12, 214, 217, 221-22, 224, 226-28, 231, 233-35, 240-41, 243-44), it is

preposterous for Moving Defendants to claim that Plaintiffs have not provided information sufficient to alert them as to the nature of the actionable conduct alleged them consistent with the requirements of Fed. R. Civ. P. 9(b).

Finally, Moving Defendants' effort to convince the Court, based on a partial quotation from a footnote in *Ray v. Gen. Motors Acceptance Corp.*, CIV.A.CV-925043(DGT), 1995 WL 151852 (E.D.N.Y. Mar. 28, 1995) that a mail fraud claim should be dismissed when plaintiffs provide no information concerning who "specifically ... received [the mailings]" (*see* Docket No. 48 at 18), is disingenuous at best. There is no such requirement. The full finding of the *Gen. Motors Acceptance Corp.* Court -- most of which was substituted with an ellipsis by Moving Defendants -- was that the plaintiff's mail fraud claim should be dismissed because the "plaintiff provided no information concerning the contents of these documents, who prepared them, specifically who sent or received them, and when they were mailed. *See Gen. Motors Acceptance Corp.*, 1995 WL 151852 (*dismissing* plaintiff's complaint where there was no factual support anywhere in the complaint describing the dates, contents, origins and destinations of the allegedly fraudulent documents, or their purpose within defendant's allegedly fraudulent scheme.). In other words, the *Gen. Motors Acceptance Corp.* plaintiff not only failed to identify the recipient of the mailings, but also failed to provide any factual detail whatsoever regarding the mailings, leaving defendants to guess as to what the nature fraud was. None of those circumstances are present here.

Plaintiffs here provided Moving Defendants with ample information regarding the fraudulent mailings, including the claim number, the fraud contained mailings, the entity through which the mailings were made, who the documents were mailed to[15] and the approximate dates on which they were mailed. In light of the foregoing, it is clear that Plaintiffs went well beyond the

---

[15] While the Predicate Act tables identify Allstate Insurance Company as the Plaintiff to which the bills were mailed (which is in fact the case), the Complaint makes clear that fraudulent bills were submitted to and relied on by all Plaintiffs.

necessary pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g., Giuliano v. Everything Yogurt, Inc.*, 819 F. Supp. 240, 244 (E.D.N.Y. 1993) (*finding* that a complaint need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme is sufficiently detailed, and it is enough to plead the general content of the misrepresentation without stating the exact words used.). Thus, in light of the extensive nature allegations in the Complaint and in the annexed Exhibits and Predicate Act tables included in support thereof, Moving Defendants' claim that Plaintiffs have not provided sufficient detail as to the nature and substance of fraud alleged against them is devoid of any merit.

**D.** **The Complaint's Allegations of Fraud Are Pled With Particularity.**

Next, Moving Defendants assert that the Complaint fails to plead fraud because many of the allegations are made "upon information and belief." Putting aside that the Complaint is pled with a great deal of specificity concerning the alleged scheme to defraud (as detailed above), with respect to those allegations pled "on information and belief," it has been long held that where the facts are peculiarly within the defendant's knowledge, matters may be pled on information and belief. *See First Capital Asset Mgmt., Inc.*, 385 F.3d at 179. It is unquestionable that in this fraud-based action, the allegations pled on information and belief concern matters that are peculiarly within the Moving Defendants' knowledge. At any event, as described above, in the context of a RICO action, this Court has found Fed. R. Civ. P. 9(b) to be satisfied where the plaintiff has identified the creators of the false insurance claims, has pleaded and submitted as exhibits hundreds of statements alleged to be fraudulent and has explained why the statements are fraudulent. *See State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 228 (E.D.N.Y. 2009) (finding fraud claims sufficiently pled.); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 237 (E.D.N.Y. 2008). The purpose of Fed. R. Civ. P. 9(b) is to give defendants fair notice of the fraud alleged against them, and Plaintiffs here have more than done so.

**E.    The RICO Claims Alleged Against Moving Defendants Are Not Time Barred.**

Moving Defendants' statute of limitations argument is similarly meritless, particularly because it contends that since the acts underlying the Complaint began in or about 2003, Plaintiffs' RICO claims against them are barred by the statue of limitations, while ignoring that the Complaint specifically alleges that Aminov participated in the affairs of the GNK Medical Supply Enterprise beginning in 2008 (the year of its incorporation), *see* Docket No. 10 at ¶ 450, and that he participated in the affairs of the Highlawn Best Medical Supply Enterprise beginning in 2009 (the year of its incorporation), *id.* at ¶ 465. Thus, since the Complaint was filed on August 3, 2011, all of the fraudulent acts allegedly committed by Aminov through the GNK Medical Supply and Highlawn Best Medical Supply enterprises occurred within the RICO statute's four year statute of limitations. To the extent the Complaint references any fraudulent acts occurring in 2003-2007, such allegations are in connection with other defendants and have no bearing on the claims for relief as against Moving Defendants.[16]

## II.

## PLAINTIFFS HAVE SUFFICIENTLY ALLEGED COMMON LAW FRAUD

Under New York law, a plaintiff alleging fraud must state five elements: (i) a material misrepresentation; (ii) made by a defendant knowing that it was false when made; (iii) with the

---

[16] Even if there were a statue of limitations argument here, which there is not, it would be premature for the Court to consider it on a motion to dismiss as Plaintiffs' have alleged fraudulent concealment. Docket No. 10 at ¶¶ 252-254. *See, e.g., Halima,* 2009 WL 750199 (E.D.N.Y. March 19, 2009) (*rejecting* the statute of limitations argument as premature on a motion to dismiss because the court credited Plaintiffs' argument that they could not discover the defendants' fraudulent scheme until a pattern of fraudulent claims developed.); *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,* CV2007-0051(ENV)(MDG), 2007 WL 2908205 (E.D.N.Y. Oct. 4, 2007) (*finding* that date by which plaintiff should have discovered the alleged fraud involves factual determinations that are unlikely to be resolved on a motion to dismiss.); *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.,* 00 CIV. 7804 (LMM), 2004 WL 487222 (S.D.N.Y. Mar. 12, 2004) (*finding* that because questions of fact exist as to whether plaintiffs should have discovered the facts alleged in their complaint prior to the expiration of the statute of limitations period, such determination is inappropriate on a motion to dismiss.); *Antonios A. Alevizopoulos & Associates, Inc. v. Comcast Int'l Holdings, Inc.,* 100 F. Supp. 2d 178 (S.D.N.Y. 2000) (*finding* that it was premature to bar plaintiffs from asserting fraudulent concealment as basis for equitable tolling because much discovery had yet to take place.); *see also Schwab v. Philip Morris USA, Inc.,* CV 04-1945 (JBW), 2005 WL 2467766 (E.D.N.Y. Oct. 6, 2005) (*holding* that the determination of the date when a plaintiff discovers or should have discovered his/her injury is a question of fact.).

intent to defraud; (iv) upon which plaintiff reasonably relies; and (v) which causes plaintiff injury. *Grafman*, 655 F. Supp. 2d, 220 (citations omitted).   Moving Defendants assert that Plaintiffs' common law fraud causes of action must fail because Plaintiffs failed to specify the knowing material misrepresentations which they made and also failed to demonstrate Plaintiffs' reliance. Docket No. 43 at 21-22.   On both points, Moving Defendants are wrong.

First, as set forth in Section C(3), *supra,* the Complaint, Predicate Act tables and Exhibits describe in great detail the nature of the fraudulent misrepresentations that Moving Defendants made to Plaintiffs.   In that regard, the Complaint specifically alleges that the Moving Defendants, among others, routinely submitted bills to Plaintiffs for reimbursement that fraudulently misrepresented that: certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, GNK Medical Supply and Highlawn Medical Supply were utilizing phantom codes for which there was no published fee schedule, the charges reflected on the GNK Medical Supply and Highlawn Medical Supply's bills for Non-Fee Schedule items was the lesser of their acquisition costs or the usual and customary price charged to the general public; and/or that the Fee Schedule codes and descriptions contained in the GNK Medical Supply and Highlawn Medical Supply's bills corresponded with the equipment purportedly provided. *See, e.g.,* Docket No. 10 at ¶¶ 169-171, 173, 177, 179-83, 195-214, 217, 221-229 and 231-234 (GNK Medical Supply); *id.* at ¶¶ 169, 171, 173, 177, 179-83, 195-204, 217 and 221 (Highlawn Medical Supply).

Moving Defendants' argument that Plaintiffs cannot now claim that they reasonably relied on Defendants' submissions because Plaintiffs have a verification process in place but chose to pay the claims, Docket No. 48 at 23, must also be rejected.   Courts within this Circuit have uniformly found that No-fault insurers are entitled to rely upon facially valid documents submitted by healthcare providers. *See Grafman.*, 655 F. Supp. 2d 212 (*finding* that reliance was sufficiently

23

alleged where insurer relied on misrepresentations in facially valid claims.). *Allstate Ins. Co. v. Ahmed Halima, 06-CV-1316 DLI/SMG, 2009 WL 750199* (E.D.N.Y. Mar. 19, 2009) (*holding* that the insurer was entitled to rely on facially valid insurance claims.); *Liguori*, 589 F. Supp. 2d 211 (E.D.N.Y. 2008) (*finding* that false representations in facially valid claims sufficiently stated reliance element); *CPT Medical Servs., P.C.*, 2008 WL 4146190; *Olmecs Medical Supply, Inc.*, 2005 WL 3710370. At bar, Plaintiffs specifically alleged that they justifiably relied upon the bills and documentation submitted by, among others, GNK Medical Supply and Highlawn Best Medical Supply in support of their No-fault claims, and further alleged that Plaintiffs paid those claims based on the representations and information contained therein. *See e.g.,* Docket No. 10 at ¶ 102. Accordingly, Plaintiffs have properly pled reliance.

### III.
### PLAINTIFFS HAVE SUFFICIENTLY ALLEGED UNJUST ENRICHMENT

Finally, the Moving Defendants argue, without citing to any authority, that the unjust enrichment cause of action cannot be used as a theory of recovery because this action is governed by the No-fault regulatory scheme and contract. Numerous courts within this District and in New York State have repeatedly rejected the foregoing arguments in upholding unjust enrichment claims in matters alleging the fraudulent submission of No-fault claims. *See, e.g,. Olmec Med. Supply*, 2005 WL 3710370, at **14-15 (*finding* allegations sufficient to sustain unjust enrichment claim against persons involved in no-fault fraud enterprise alleged to have benefited from its operation.); *CPT Med. Servs.*, 375 F. Supp. 2d at 154-55 (*denying* motion to dismiss unjust enrichment claim against referring physicians where it was reasonable to infer that they benefited from the scheme.); *Rozenberg*, 590 F. Supp. 2d 384 at 389-90 (finding claim for unjust enrichment sufficiently stated.); *See also Allstate Ins. Co. v. Bogoraz*, 10-CV-5286 SJF ETB, 2011 WL 2421045 (E.D.N.Y. June 10, 2011), a copy of which is annexed to the Stern Declaration as Exh. "M;" *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010); *Grafman*, 655 F. Supp. 2d, 222; *Liguori*,

24

589 F. Supp. 2d, 237; *Allstate Ins. Co. v. Belt Parkway Imaging, P.C.*, 11 Misc. 3d 810, 816, 813 N.Y.S.2d 867, 872 (Sup. Ct. 2006). The result should be no different here.

## IV.

## TO THE EXTENT THAT THE COURT FINDS A DEFECT IN THE COMPLAINT, PLAINTIFFS REQUEST LEAVE TO AMEND

Plaintiffs believe that the Complaint adequately alleges all of its claims for relief. However, to the extent that the Court finds the Complaint to be inadequate in any manner, Plaintiffs respectfully request leave pursuant to Fed. R. Civ. P. 15(a) to serve an amended Complaint, as Plaintiffs believe that any such inadequacies would merely involve an issue of technical pleading rather than a substantive defect in the claims. In that regard, there is no legitimate basis for Defendants to suggest that such an amendment would be futile or that they would be prejudiced. *See e.g., Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., Inc.*, CV-07-715, 2008 WL 1787684 (E.D.N.Y. Apr. 17, 2008) *citing Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (*finding that where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.*).

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that Defendants GNK Medical Supply, Highlawn Best Medical Supply, and Yakov Aminov's Motion to Dismiss be denied.

Dated: New York, New York
       December 2, 2011

STERN & MONTANA, LLP

By: *Daniel S. Marvin*
    Robert A. Stern, Esq. (RAS-1282)
    Sandra P. Burgos, Esq. (SB- 6856)
    Daniel S. Marvin, Esq. (DM-7106)
    Attorneys for Plaintiffs
    Trinity Centre
    115 Broadway
    New York, New York 10006
    212-532-8100