UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, and ALLSTATE
NEW JERSEY INSURANCE COMPANY,

                        Plaintiffs,

- versus -

AMNER KHAIMOV, ZOYA AMINOVA,
MURDAKHAV KHAIMOV, ALBERT
KHAIMOV, YAKOV AMINOV, ILYA
TAMAYEFF, ABRAHAM LAYLIEV,
ROBERT TERDJANIAN, GALINA VOVK
a/k/a VALENTINA BABUCEA, VLADISLAV
AGUVAYEV, OGEL SIMAKOV, SERGEY
MEZKULA, GRIGOL APRESYANTSI,
MARIFAT DAVLATKHONOVA, MICHAEL
ZAVRAZHIN, LaPERLA SUPPLY, INC. f/k/a
NEW MILLENIUM SUPPLY, INC.,
PARSONS MEDICAL SUPPLY, INC.,
JAMAICA MEDICAL SUPPLY, INC.,
QUEENS MEDICAL SUPPLY, INC., GRAND
MEDICAL SUPPLY, INC., ROYAL
MEDICAL SUPPLY, INC., UTOPIA
EQUIPMENT, INC., GNK MEDICAL
SUPPLY, INC., HIGHLAWN BEST
MEDICAL SUPPLY, INC., NEW CAPITAL
SUPPLY, INC., AVR MEDICAL SUPPLY,
INC., FRAZIER TRADING CO., INC., A TO Z
WHOLESALE, INC., BULLS EYE
WHOLESALE, INC., E-Z SUPPLY, INC.,
GLOBAL BEST DEAL, INC., GRIGOL
SUPPLY, INC., HONO OFFICE SUPPLY,
INC., MEDCURE SUPPLIES, INC., TELYA
CORP., MAJOR MARKET MERCHANDISE,
INC., VZ GROUP, INC., JOHN DOES 1
THROUGH 20, and ABC CORPORATIONS 1
THROUGH 20,

                        Defendants.

ONLINE PUBLICATION ONLY

MEMORANDUM
AND ORDER

11-CV-2391 (JG) (JMA)

A P P E A R A N C E S:

    STERN & MONTANA, LLP
        Trinity Centre, 115 Broadway
        New York, New York 10006
    By:    Robert A. Stern
        Sandra P. Burgos
        Daniel S. Marvin

    *– and –*

    CADWALADER, WICKERSHAM & TAFT, LLP
        1 World Financial Center
        New York, New York 10281
    By:    William J. Natbony

    *Attorneys for Plaintiffs*

    BLODNICK, CONROY, FAZIO & DIGLIO, P.C.
        1325 Franklin Avenue, Suite 555
        Garden City, New York 11530
    By:    Maria Campese Diglio
        Matthew J. Conroy
        *Attorney for Defendants Aminov, GNK Medical Supply, Inc. and Highlawn Best Medical Supply, Inc.*

    GARY TSIRELMAN, P.C.
        65 Jay Street, 3rd Floor
        Brooklyn, New York 11201
    By:    David M. Gottlieb
        Gary Tsirelman
        *Attorney for Defendants Amner Khaimov, Murdakhay Khaimov, Albert Khaimov, Aminova, Tamayeff, LaPerla Supply, Inc. f/k/a/ New Millennium Supply, Inc., Parsons Medical Supply, Inc., Jamaica Medical Supply, Inc., Queens Medical Supply, Inc., Grand Medical Supply, Inc., Royal Medical Supply, Inc., Utopia Equipment, Inc., and New Capital Supply, Inc.*

JOHN GLEESON, United States District Judge:

        In this civil action, an automobile insurance company alleges that medical equipment providers perpetrated a massive fraud in which they submitted hundreds of fraudulent invoices for payment under New York's automobile insurance no-fault law. The plaintiffs are Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty

Insurance Company and Allstate New Jersey Insurance Company (collectively, "Allstate"). Allstate asserts a total of thirty-two causes of action against defendants Amner Khaimov, Zoya Aminova, Murdakhay Khaimov, Albert Khaimov, Yakov Aminov, Ilya Tamayeff, Abraham Layliev, Robert Terdjanian, Galina Vovk a/k/a Valentina Babucea, Vladislav Aguvayev, Ogel Simakov, Sergey Mezkula, Grigol Apresyantsi, Marifat Davlatkhonova, Michael Zavrazhin, LaPerla Supply, Inc. f/k/a/ New Millennium Supply, Inc. ("LaPerla"), Parsons Medical Supply, Inc. ("Parsons"), Jamaica Medical Supply, Inc. ("Jamaica"), Queens Medical Supply, Inc. ("Queens"), Grand Medical Supply, Inc. ("Grand"), Royal Medical Supply, Inc. ("Royal"), Utopia Equipment, Inc. ("Utopia"), GNK Medical Supply, Inc. ("GNK"), Highlawn Best Medical Supply, Inc. ("Highlawn"), New Capital Supply, Inc. ("New Capital"), AVR Medical Supply, Inc. ("AVR"), Frazier Trading Co., Inc. ("Frazier"), A to Z Wholesale, Inc. ("A to Z"), Bulls Eye Wholesale, Inc. ("Bulls Eye"), E-Z Supply, Inc. ("E-Z"), Global Best Deal, Inc. ("Global Best"), Grigol Supply, Inc. ("Grigol Supply"), Hono Office Supply, Inc. ("Hono"), Medcure Supplies, Inc. ("Medcure"), Telya Corp. ("Telya"), Major Market Merchandise, Inc. ("Major Market"), VZ Group, Inc. ("VZ Group"), John Does 1 through 20 and ABC Corporations 1 through 20. The Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), common law fraud, unjust enrichment and aiding and abetting.

Two sets of defendants have filed motions to dismiss the complaint. First, defendants Aminov, GNK and Highlawn (collectively, the "Aminov defendants") moved to dismiss the RICO, common law fraud and unjust enrichment claims against them (Counts XX-XXIII). Then defendants Amner Khaimov, Murdakhay Khaimov, Albert Khaimov, Aminova, Tamayeff, LaPerla, Parsons, Jamaica, Queens, Grand, Utopia and New Capital (collectively, the

3

"Khaimov defendants")[1] moved to dismiss the claims against them, also for RICO, common law fraud and unjust enrichment (Counts I-III, V-VII, IX-XII, XIV-XVIII, XXV-XXVII).  The Khaimov defendants moved in the alternative to compel arbitration of all claims against them.  A few days before oral argument, the Aminov defendants provided notice that they joined the Khaimov defendants' arguments in full.  For the reasons set forth below and stated at oral argument, the motions are denied in their entirety.

## BACKGROUND

A.        *Factual Allegations*

Although the 162-page Complaint[2] in this case contains extensive detail, a full explication of the Complaint's factual allegations is unnecessary to decide the motions before me.  I here provide only a summary of those allegations to provide context for this decision.

The moving defendants are retail stores that provide durable medical equipment ("DME") and/or orthotic devices[3] to victims of automobile accidents, and the stores' respective owners.  Allstate alleges that these retail stores entered into arrangements with medical clinics and wholesalers to perpetrate a sophisticated fraudulent scheme in which the retail stores submitted hundreds of fraudulent invoices to Allstate for reimbursement under New York's no-fault law[4] that grossly inflated the amounts the retail stores actually paid for DME and/or orthotic devices.

---

[1] At oral argument, I inquired whether Royal had intended to join this motion, given that it is represented by the same counsel as the other Khaimov defendants and was allegedly owned by Albert Khaimov, one of the moving defendants.  Counsel for the Khaimov defendants indicated that they would like the court to consider Royal as a moving defendant as well.  Accordingly, Royal is hereby deemed to be among the moving Khaimov defendants.

[2] All references to the Complaint refer to the First Amended Complaint, ECF No. 10.

[3] Examples of such equipment are cervical pillows, cervical traction units, hot/cold water circulating pumps, electronic muscle stimulator units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses, whirlpools, cervical collars and ankle, back, knee, shoulder and wrist braces.  Compl. ¶ 2.

[4] New York's no-fault insurance law was passed "to create a simple, efficient system that would provide prompt compensation to accident victims without regard to fault, and in that way reduce costs for both

According to the Complaint, the wholesalers coordinated with the retail stores to supply them with falsified invoices, some of which reflected prices that were 10 to 20 times the actual prices the retail stores paid the wholesalers for the equipment; other times, the invoices documented illusory purchases where no equipment was bought at all. The retail stores in turn used these inflated invoices to demand reimbursement from Allstate pursuant to its obligations under the no-fault insurance law in amounts that grossly exceeded the amounts the stores were actually entitled to. Accident victims were induced to sign blank delivery receipts verifying receipt of equipment before it was ever received; failing that, their signatures were forged. To further obfuscate their fraud, the retail stores remitted payment to the wholesalers for the amount of the inflated invoices and supplied this documentation to Allstate; however, through a complex money laundering scheme, the wholesalers cashed the checks at complicit check cashing establishments that returned up to 90% of the money to the retail stores, which in turn paid kick-packs to the medical clinics that directed the accident victims to the retail stores in the first place.

B. *Procedural History*

Allstate commenced this action on May 18, 2011, asserting against the moving defendants claims for RICO violations, common law fraud and unjust enrichment. ECF No. 1. The complaint also asserted claims against the non-moving medical clinics and wholesalers, mostly for aiding and abetting. *Id.* On August 3, 2011, Allstate filed its First Amended Complaint ("Complaint"), which is identical to its original complaint except for changing plaintiff Allstate New Jersey Insurance Company's principal place of business from New Jersey

---

courts and insureds." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004). Under the law, automobile insurance providers are required to include in their policies coverage for injuries arising from car accidents, irrespective of who is to blame for the accident. The no-fault scheme thus "supplant[s] the state's common law tort remedies for most injuries associated with automobile accidents." *Id.* The law requires car insurance providers to reimburse injured persons for "basic economic loss," including medical expenses, and it sets forth a schedule of permissible charges for specific services. *Id.* (citing N.Y. Ins. Law §§ 5102, 5108). An injured person who seeks medical treatment may assign her right to no-fault benefits to her medical provider, and such assignment is typical.

to Illinois. ECF No. 10. The Aminov defendants filed a motion to dismiss the Complaint on November 4, 2011. ECF No. 48. On December 16, 2011, the Khaimov defendants filed a motion to dismiss the Complaint or, in the alternative, to compel arbitration of the claims. ECF No. 59. On February 10, 2012, the Aminov defendants filed a letter indicating they joined the Khaimov defendants' arguments in full. ECF No. 70. The court held oral argument on the motions on February 16, 2012.

## DISCUSSION

A.  *Motions To Dismiss*

In an oral ruling at the conclusion of oral argument, I denied the moving defendants' motions to dismiss. I have explained my reasoning in writing in a memorandum and order recently filed in *Allstate Ins. Co. v. Lyons*, No. 11-CV-2190 (JG) (VVP), 2012 WL 517600 (Feb. 16, 2012 E.D.N.Y.).

B.  *Motion To Compel Arbitration*

The Khaimov defendants (joined by the Aminov Defendants) move in the alternative to compel arbitration of the claims against them. They argue that the individual automobile insurance contracts governing the allegedly fraudulent billings at issue (the "Allstate insurance contracts") and New York Insurance Law § 5106(b) give them the option to resolve the instant dispute through arbitration. I find that the claims before me unambiguously fall outside the scope of the arbitration clause in the Allstate insurance contracts. Further, to the extent that the Allstate insurance contracts are narrower than the statute and thus must be read as if they reached the full breadth of the statute, *see* N.Y. Ins. Law § 5103(h) ("Any policy of insurance . . . which does not contain provisions complying with the requirements of [Article 51], shall be construed as if such provisions were embodied therein."), I have already found in *Lyons*, 2012 WL 517600, at *13-15, that the scope of New York Insurance Law § 5106(b) does

6

not reach claims of the sort before me – affirmative suits by insurance companies to claw back money already paid to claimants on the ground that it was fraudulently obtained.

1. *Contractual Basis for Compelling Arbitration*

The Allstate insurance contracts all contain the following provision:

**Arbitration**
In the event any person making a claim for first party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance.

Arb. Defs.' Mo. To Dismiss (ECF No. 61) at 7 & Ex. A at 5. The Khaimov defendants argue that "[b]ecause Allstate's lawsuit simply concerns the question of whether or not it overpaid . . . medical benefits, Allstate's legal claims are all encompassed by this broad arbitration clause that covers 'any matter relating' to a claim for first-party benefits." Arb. Defs.' Mo To Dismiss at 7.

Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002) (citations and internal quotation marks omitted); *accord Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008). "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 98 N.Y.2d at 569 (citation omitted).

The arbitration clause at issue here expressly limits its application to disagreements between Allstate and "any person making a claim for first party benefits" under the insurance contract. However, this lawsuit does not involve anyone *making* a

7

claim for first party benefits. For all of the billings at issue in this case, the retailers already submitted their claims for first party benefits (upon being assigned those claims by the accident victims), and Allstate paid them. This is an affirmative action brought by Allstate to claw back those payments on the ground that they were induced by fraud. Thus, I find the arbitration clause of the Allstate insurance contracts clearly and unambiguously does not reach this case, because neither party in this case is "making a claim for first party benefits."

2.  *Alternative Statutory Basis for Compelling Arbitration*

Because my interpretation of the Allstate insurance contracts arguably renders its arbitration provision narrower than that of the insurance statute, the defendants may choose to argue they should receive the benefit of the full statutory scope. *See* N.Y. Ins. Law § 5103(h) ("Any policy of insurance . . . which does not contain provisions complying with the requirements of [Article 51], shall be construed as if such provisions were embodied therein."). However, even assuming this is true, the argument does not help the defendants.

Section 5106(b) of the New York no-fault insurances law requires that:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

N.Y. Ins. Law § 5106(b). I already ruled in *Lyons*, 2012 WL 517600, at *13-15, that this statutory provision does not reach affirmative claims by insurance companies to recover payments already made to claimants on the ground of fraud. Allstate does not here seek any declaratory, injunctive or monetary relief relating to unpaid claims;[5] it simply wants

---

[5] After oral argument, counsel for the Khaimov defendants filed a letter with the court indicating that some of the claims listed in the Complaint's appendices are in fact open and unpaid claims. *See* ECF No. 73.

to recover payments it already made on the ground that those payments were wrongfully induced by a later-discovered fraud. Neither the arbitration provision of the Allstate insurance contracts nor the statute is broad enough to reach these claims.

## CONCLUSION

For the reasons set forth herein and articulated on the record at oral argument, the motions to dismiss and the motion to compel arbitration are denied in their entirety.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 29, 2012
      Brooklyn, New York

---

Plaintiff's counsel responded that it is not seeking any relief with respect to any open claims. *See* ECF No. 74. Accordingly, to the extent that the Complaint's appendices include reference to any open claims, those claims are not subject to this lawsuit.